YEE GEE v. CITY AND COUNTY OF SAN FRANCISCO et al.

(District Court, N. D. California, Second Division. July 20, 1916.)

No. 228.

1. INJUNCTION ☞105(2)—PROTECTION OF PROPERTY RIGHTS—RESTRAINING ENFORCEMENT OF UNCONSTITUTIONAL STATUTE OR ORDINANCE.

While ordinarily a court of equity will not interfere to restrain a criminal prosecution instituted or threatened for violation of an unconstitutional statute or ordinance, it may enjoin the enforcement of an act which will involve a direct invasion of property rights, notwithstanding such enforcement is through a criminal prosecution.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 179; Dec. Dig. ☞105(2).]

2. CONSTITUTIONAL LAW ☞70(3)—ORDINANCES—VALIDITY—MOTIVES FOR ENACTMENT.

Where a legislative act is fair upon its face and capable of impartial application to all who come within its terms, the mere motive actuating its enactment cannot be inquired into as a ground for holding it invalid.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 131; Dec. Dig. ☞70(3).]

3. MUNICIPAL CORPORATIONS ☞121—ORDINANCES—PROCEEDINGS TO DETERMINE VALIDITY.

One who has not been injured thereby has no standing to attack the validity of an ordinance on the ground that it vests an arbitrary power in a board to grant or refuse licenses.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 257; Dec. Dig. ☞121.]

4. MUNICIPAL CORPORATIONS ☞595, 597—VALIDITY OF ORDINANCES—POLICE REGULATIONS.

A municipality duly authorized by the Constitution and statutes of the state may, in the exercise of the police power, regulate the conduct of any business in any respect as to which it may involve the public health, safety, or welfare, provided the regulation is reasonably adapted to their protection; but it may not, under the guise of a police regulation, interfere with the constitutional right of a citizen to carry on a legitimate business, harmless in itself, beyond a point reasonably required for the protection of the public.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1321, 1322, 1325, 1354; Dec. Dig. ☞595, 597.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MUNICIPAL CORPORATIONS ⊖63(2)—VALIDITY OF ORDINANCES—QUESTIONS FOR JUDICIAL DETERMINATION.

While every intendment is to be indulged in favor of the validity of an ordinance within the general power of the municipality the question of the reasonableness of a regulatory measure, in view of the apparent end sought, is one for judicial determination.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378; Dec. Dig. ⊖63(2).]

6. MUNICIPAL CORPORATIONS ⊖63(1)—VALIDITY OF ORDINANCES—POLICE REGULATIONS.

A mere legislative declaration that a business or occupation, harmless and innocuous in itself, is inimical to the public interest, cannot make it so, nor render a restrictive ordinance valid, unless by reason of surrounding conditions the declaration can be said to accord with the fact, as based upon common observation and human experience.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1879; Dec. Dig. ⊖63(1).]

7. MUNICIPAL CORPORATIONS ⊖625—ORDINANCE REGULATING LAUNDRIES— CONSTITUTIONALITY.

A provision of an ordinance of the city and county of San Francisco that "no person or persons owning or employed in the public laundries or public wash houses * * * shall wash, mangle, starch, iron, or do any other work on clothes between the hours of 6 o'clock p. m. and 7 o'clock a. m.," applying as it does throughout the entire city, without regard to surrounding conditions, and to employers and employés alike, is void, as an unreasonable interference with the liberty of the citizen in the prosecution of a legitimate occupation, and as having no real or substantial relation to the purpose ostensibly sought to be accomplished.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. ⊖625.]

In Equity. Suit by Yee Gee against the City and County of San Francisco and James Rolph, Jr., Mayor of said City and County. On motion to dismiss bill. Motion denied, and decree for complainant.

Godwin B. Swift, of San Francisco, Cal., for plaintiff.

Percy V. Long, City Atty., and Maurice T. Dooling, Jr., Asst. City Atty., both of San Francisco, Cal., for defendants.

VAN FLEET, District Judge. This is a bill by plaintiff, a native-born citizen of the United States, of the Chinese or Mongolian race, now and for many years owning and conducting a public laundry in the city of San Francisco, to restrain the enforcement of an ordinance (No. 3300 N. S.) of its board of supervisors, approved June 27, 1915, regulating laundries therein, and particularly of certain provisions thereof, on the ground that the same violates the Fourteenth Amendment of the Constitution, and that its enforcement will deny to plaintiff the equal protection of the law, and deprive him of his property and property rights without due process.

The general assignment of invalidity, involving the operation of the ordinance as a whole, is that it is unreasonably and arbitrarily discriminatory; it being alleged that it was passed and adopted for the sole purpose of interfering with and injuring the laundry business as carried on by persons of the plaintiff's race, of which a large number are alleged to be engaged in the business in said city, and in effect to drive them out of the business. The special features assailed are:

(1) Certain provisions which it is claimed commit to the board of supervisors the arbitrary discretion to grant or refuse licenses to carry on the laundry business, and make it unlawful to engage therein without first securing a special permit from said board, which provisions it is claimed are in excess of the power of said board; and

(2) A provision limiting and restricting the hours of the day within which such business may be carried on and laundry work performed, in a manner and to an extent which, it is asserted, render such restriction wholly unreasonable and void as an exercise of the police power or otherwise.

The defendants have interposed a motion to dismiss the bill for want of equity, and the questions accordingly arise on the face of the pleadings.

[1] 1. The first ground urged in support of the motion to dismiss is that plaintiff is seeking to enjoin the enforcement of a penal ordinance; and that such relief is not within the province of equity. This is based upon the fact that the ordinance makes any violation of its provisions a misdemeanor, to be punished "by a fine of not more than $500, or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment," and provides no other mode for its enforcement.

It is quite true that ordinarily a court of equity will not interfere to restrain a criminal prosecution instituted or threatened against one violating the provisions of an unconstitutional statute or ordinance (Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778); the remedy being at law, either by a defense in the criminal courts, where the question of the validity of the act may be as effectually availed of as in a court of equity (Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535), or by proceedings on habeas corpus. But this is not universally true. If the enforcement or threatened enforcement of the act involves or will involve a direct invasion of property rights, equity will interfere to restrain the perpetration of the wrong, notwithstanding the enforcement is through a criminal prosecution. Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169, and cases there cited.

The present case, I think, falls within this exception. The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with or abridgment of such right is an invasion thereof, and a restriction of the liberty of the citizen as guaranteed by the Constitution. Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133. That the industry here involved is in its essential nature a perfectly harmless, legitimate, and even necessary one, as viewed in its relation to our domestic and social economy, no question is or can be made. In re Hong Wah (D. C.) 82 Fed. 623; In re Quong Woo (C. C.) 13 Fed. 231; In re Tie Loy (C. C.) 26 Fed. 611; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. If, therefore, the ordinance as a whole, or in either of the particular features attacked, be in contravention of plaintiff's rights

under the Constitution, its enforcement as to him in such obnoxious respect would in legal contemplation constitute an unauthorized invasion of his property.

In this aspect the case is to be distinguished from that of Moss v. McCarthy (C. C.) 191 Fed. 202, decided in this court, relied upon by defendants. The ordinance there attacked was not directed against a legitimate business, but the maintenance of "bucket shops," something regarded as offensive to the public morals and welfare, and in the maintenance of which, therefore, no right of property could legitimately inhere, and it was held that the threatened raiding of plaintiff's place of business by the police, and the arrest and prosecution of the plaintiff and his associates, would not constitute an injury to his property rights within the exception above noted; the court saying:

"The threatened invasion or injury to property rights must be an injury which will naturally and necessarily follow the threatened enforcement of the obnoxious ordinance; not a loss, damage, or detriment flowing merely incidentally or consequentially therefrom, through the arrest and prosecution of the party threatened, however irksome or expensive such action may prove."

See Wiseman v. Tanner (D. C.) 221 Fed. 694.

[2] 2. The first two assignments against the ordinance may be briefly disposed of. The defendants' objection to the sufficiency of the averments of the bill to disclose invalidity by reason of the alleged purpose of the supervisors in passing it to discriminate against plaintiff's race is well taken. The mere allegation of an improper motive of a legislative body in adopting a measure is not, standing alone, sufficient to disclose invalidity. So long as the act is fair upon its face, and capable of even-handed and impartial application to all who come within its terms, the mere motive actuating its enactment cannot be inquired into as a ground for avoiding it. Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145; Fletcher v. Peck, 6 Cranch, 87, 131, 3 L. Ed. 162; United States v. Des Moines, etc., Co., 142 U. S. 510, 545, 12 Sup. Ct. 308, 35 L. Ed. 1099; Doyle v. Insurance Co., 94 U. S. 535, 24 L. Ed. 148; Ex parte McCardle, 7 Wall. 506, 514, 19 L. Ed. 264. It is not alleged that the ordinance has received any partial or discriminating enforcement, and there is therefore nothing which, if proved, would bring the case within the doctrine of Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220.

[3] 3. As to the provisions asserted to have the effect to vest arbitrary power in the supervisors to grant or reject permits to engage in the business, their validity need not be inquired into, since plaintiff does not show himself injured thereby. It is not alleged that he has ever applied for or been denied a permit under this ordinance, and he is not, therefore, in a position to attack it on this ground, assuming it to be subject to the vice alleged. Gundling v. Chicago, 177 U. S. 183, 186, 20 Sup. Ct. 633, 44 L. Ed. 725; Kissinger v. Hay, 52 Tex. Civ. App. 295, 113 S. W. 1005; Johnson Exp. Co. v. Chicago, 136 Ill. App. 368, 375.

4. This leaves for consideration but the second special point of attack against the ordinance—that involving the provision prescribing the hours of the day in which the work of a laundry may not be carried on. That provision is this:

"Sec. 9. No person or persons owning or employed in the public laundries or public wash houses provided for in section 1 of this ordinance shall wash, mangle, starch, iron, or do any other work on clothes between the hours of 6:00 o'clock p. m. and 7:00 o'clock a. m., nor upon any portion of that day known as Sunday."

Section 1 embraces within its terms all public laundries or wash houses "within the limits of the city and county of San Francisco." It will thus be seen that the terms of section 9 apply to all laundries maintained in the entire territory embraced within the city limits, without regard to differing conditions existing in different sections or districts thereof, the density of population or character of buildings, or the situation or relation of the laundry to other structures or premises, as calculated to cause danger of fires, or other objectionable considerations.

It is claimed that this sweeping and all-inclusive nature of the restriction, with its limitation on the number of hours prescribed for carrying on the business, having regard to its intrinsic nature, renders the provision subject to the objection that it constitutes an undue and unreasonable restraint upon plaintiff's right to pursue his occupation, and as such is in violation of his rights under the Constitution. The defendants contend, on the other hand, that it is a perfectly reasonable and proper police regulation, and one within the power of the board of supervisors to enact; and in support of this contention they place their reliance upon the cases of Barbier v. Connolly, 113 U. S. 29, 5 Sup. Ct. 357, 28 L. Ed. 923, Soon Hing v. Crowley, 113 U. S. 707, 5 Sup. Ct. 730, 28 L. Ed. 1145, and In re Wong Wing, 167 Cal. 109, 138 Pac. 695, 51 L. R. A. (N. S.) 361.

The first two cases involved provisions couched in precisely similar terms in two different laundry ordinances of the city and county of San Francisco, whereby, within certain prescribed limits of the city, the washing and ironing of clothes in public laundries was prohibited between the hours of 10 o'clock at night and 6 o'clock in the morning. The court in Barbier v. Connolly held that the provision was not unreasonable or discriminatory, but was "purely a police regulation, within the competency of any municipality possessed of the ordinary powers belonging to such bodies." And in Soon Hing v. Crowley, referring to its previous ruling in the Barbier Case, repeated substantially the language above quoted and added:

"And it is of the utmost consequence in a city subject, as San Francisco is the greater part of the year, to high winds, and composed principally within the limits designated of wooden buildings, that regulations of a strict character should be adopted to prevent the possibility of fires. That occupations in which continuous fires are necessary should cease at certain hours  *  *  * would seem to be, under such circumstances, a reasonable regulation as a measure of protection. At any rate, of its necessity for the purpose designated the municipal authorities are the appropriate judges. Their regulations in this matter are not subject to any interference by the federal tribunals, un-

less they are made the occasion for invading the substantive rights of persons, and no such invasion is caused by the regulation, in question."

In re Wong Wing involved a provision in the then-existing ordinance of San Francisco practically identical in its terms with the limitation under consideration in the present case. In response to the objection of unreasonableness here urged, its validity was sustained; the court in a comparatively brief opinion, after stating the question, saying:

"This court and the Supreme Court of the United States have declared constitutional an ordinance very similar to the one before us, where the restriction upon the hours of labor required the cessation of work in public laundries between the hours of 10 o'clock p. m. and 6 o'clock a. m. Ex parte Moynier, 65 Cal. 34, 2 Pac. 728; Barbier v. Connolly, 113 U. S. 29 [5 Sup. Ct. 357, 28 L. Ed. 923]; Soon Hing v. Crowley, 113 U. S. 707 [5 Sup. Ct. 730, 28 L. Ed. 1145]. The principles announced in those cases have been so frequently upheld, and the authorities themselves have been so often cited, that extended discussion of the opinions is quite unnecessary."

And, after stating the principles there announced, it is concluded:

"We are therefore to determine whether the limitation of the time of labor in public laundries to 11 hours each day is a restriction so unreasonable that it invades the constitutional rights of persons engaged in the laundry business. We cannot say that it does. Very many, perhaps a majority, of occupations, employments, and forms of business in San Francisco are conducted during less than 11 working hours a day."

It will thus be seen that the Supreme Court of California rested its ruling largely, if not entirely, upon the authority of the Barbier and Soon Hing Cases, under the assumption that the principles there announced had equal application to the regulation before them. With the greatest respect for the views of that court, I think its opinion fails to take note of the very material difference between the two measures. In the one instance, the regulation was restricted in its application to certain specified and defined districts of the city, and prescribed a period of cessation from labor well within the acceptation of what would at once be regarded as having reasonable relation to the object sought, that of the protection of the public from the danger of uncontrolled fires. In the other, the regulation is made to apply to the entire limits of a great city, embracing a territory some 10 miles wide by 15 miles long, without regard to differing physical conditions obtaining therein, and with a limitation of the hours of labor to a period which, to say the least, having regard to the nature of the business, at once gives rise to a question in the mind whether it bears any reasonable relation to any conceivable necessity for protection to the public from such dangers. It seems to me that this radical difference between the two regulations may not be ignored. That the Supreme Court of the United States did not ignore it will at once appear from their discussion of the subject. They repeatedly refer to the fact that in the cases before them the regulation as to hours of labor applied only to certain specified limits within the city, and they construe its purpose to have reference to the special conditions existing in those districts.

[4] It is, of course, not questioned that the municipality, under the powers conferred upon it by the Constitution and statutes of the state, has the right to regulate the business of a laundry and the manner in which it shall be carried on in all respects as to which it may be said to in any wise involve the public health, safety, or welfare, and this the present ordinance very fully undertakes to do. Thus, among other features, it is provided (section 2):

"No permit shall be granted except upon report from the health officer of said city and county or other satisfactory evidence that the premises are properly and sufficiently drained and that all proper arrangements for carrying on the business without injury to the sanitary condition of the neighborhood have been complied with, and particularly that the provisions of all orders and ordinances pertaining thereto have been complied with, and a report from the fire marshal of the city and county of San Francisco or other satisfactory evidence that the stoves, chimneys, machinery, equipment, washing and drying apparatus, and the appliances for heating smoothing-irons are in good condition, and that their use is not dangerous to the surrounding property from fire, and that all proper precautions have been taken to comply with the provisions of the ordinances defining the fire limits of the city and county of San Francisco and regulating the erection and use of buildings in said city and county, and of the general orders and ordinances."

And it is further provided (section 8) that it shall be unlawful to carry on the business—

"in any building or any portion thereof, or in any annex or outhouse thereto or other premises that shall be occupied or used either directly or indirectly as a public hall or store, or that is frequented by persons likely to spread infectious, contagious or loathsome diseases, or that is occupied or used or frequented directly or indirectly for any immoral or unlawful purpose."

As to all these features it may at once be said that the regulations are such as to give rise to no question as to their propriety as having obvious relation to the public health, welfare, and safety, and as thus falling well within the regulative power. And, as we have seen, there is likewise no question as to the power to restrain the prosecution of such a business during certain hours of the 24, where by reason of the nature of the business, the instrumentalities employed, and the surrounding conditions its prosecution during those hours is calculated to endanger the public safety. So far there is no controversy. But the question here presented is whether, without regard to the existence of such conditions, a municipality may impose a general limitation or restriction upon the citizen as to the hours within which he may prosecute his chosen industry—a respect as to which, independently of particular conditions, there is obviously no natural or inherent menace to the public—without trenching upon that degree of freedom and liberty of action guaranteed him by the Constitution.

[5] Is such a regulation within the rule of reason which must govern the courts in determining its validity? For that neither a municipality nor the Legislature of a state may competently interfere under the guise of a police regulation with the liberty of the citizen in the conduct of his business—legitimate and harmless in its essential character—beyond a point reasonably required for the protection of the public, is too thoroughly settled to call for any extended citation of authority in its support. And while at an earlier period the question

of the reasonableness of regulatory measures was deemed more largely a legislative than a judicial one (Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77), the more modern doctrine is that, while every intendment is to be indulged in favor of the validity of an act of the Legislature of a state or of a city ordinance within the general power of the municipality to adopt, after all the question of the reasonableness of a regulatory measure in view of the apparent end sought is one for the courts to determine (Dobbins v. Los Angeles, supra, and cases there cited; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205). And the Supreme Court of California has fully recognized this principle. In Ex parte Whitwell, 98 Cal. 78, 32 Pac. 870, 19 L. R. A. 727, 35 Am. St. Rep. 152, in discussing the power of the courts in such cases, that court said:

"But it is not true that when this power is exerted for the purpose of regulating a business or occupation, which in itself is recognized as innocent and useful to the community, the Legislature is the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue such business or profession."

[6] Another principle involved in the exercise of the police power, which it is hardly necessary to state, is that a mere legislative declaration that a business or occupation, harmless and innocuous in itself, is inimical to the public interest, either as a whole or as to some feature of its conduct, cannot make it so, unless by reason of surrounding conditions the declaration can be said to accord with the fact as based upon common observation and human experience. The Legislature cannot by its mere ipse dixit make that a guilty thing which is intrinsically an innocent one. It would be idle, for instance, for the Legislature to declare that the occupation of farming or the work of the horticulturist was in its nature inimical to the public interest, and to undertake to regulate the hours of the day in which the work of those great industries should be prosecuted. Such an attempt would, under existing conditions, at least, be treated only with derision, as falling wholly without the bounds of reason, and as involving a mere arbitrary attempt to interfere with the liberty of the citizen. In other words, any attempt at police regulation which interferes with the individual in the conduct of an innocent and legitimate business must have an appreciable relation to some public evil justly to be apprehended, and be reasonably calculated to avoid such evil. Beyond that the Legislature may not go. Speaking of these limitations, in Lochner v. New York, supra, the Supreme Court said:

"It must, of course, be conceded that there is a limit to the valid exercise of the police power by the state. There is no dispute concerning this general proposition. Otherwise the Fourteenth Amendment would have no efficacy and the Legislatures of the states would have unbounded power, and it would be enough to say that any piece of legislation was enacted to conserve the morals, the health, or the safety of the people; such legislation would be valid, no matter how absolutely without foundation the claim might be. The claim of the police power would be a mere pretext—become another and delusive name for the supreme sovereignty of the state, to be exercised free from constitutional restraint. This is not contended for. In every case that comes before this court, therefore, where legislation of this character is

concerned and where the protection of the federal Constitution is sought, the question necessarily arises: Is this a fair, reasonable, and appropriate exercise of the police power of the state, or is it an unreasonable, unnecessary, and arbitrary interference with the right of the individual to his personal liberty or to enter into those contracts in relation to labor which may seem to him appropriate or necessary for the support of himself and his family? * * * The mere assertion that the subject relates, though but in a remote degree, to the public health, does not necessarily render the enactment valid. The act must have a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate before an act can be held to be valid which interferes with the general right of an individual to be free in his person and in his power to contract in relation to his own labor."

And in Dobbins v. Los Angeles, supra, the court say with reference to this power:

"It is now thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments, undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property."

And see Lawton v. Steele, 152 U. S. 133, 137, 14 Sup. Ct. 499, 38 L. Ed. 385.

These general principles have been applied in the concrete to large numbers of cases involving the validity of municipal ordinances, many of them regulating laundries, presenting considerations more or less closely allied to the present; and wherever they have been found to have been violated the courts have not hesitated to declare the ordinance beyond the power of the municipality to enforce. Ex parte Sing Lee, 96 Cal. 354, 31 Pac. 245, 24 L. R. A. 195, 31 Am. St. Rep. 218; The Laundry Case (C. C.) 13 Fed. 229, 7 Sawy. 528; In re Hong Wah (D. C.) 82 Fed. 623; Stockton Laundry Case (C. C.) 26 Fed. 611; In re Sam Kee (C. C.) 31 Fed. 681; Ex parte Whitwell, 98 Cal. 73, 32 Pac. 870, 19 L. R. A. 727, 35 Am. St. Rep. 152. While none of these cases involved the precise objection or phase of the question arising under the present ordinance, they are nevertheless valuable and instructive as illustrating the application in cases of this impression of the important limitations above stated, which must be kept in view in determining the validity of any measure involving an exertion of that comprehensive and elastic, but to some extent indefinable, right left in the states, called the "police power," and the application of which must by a process of analogy aid us in determining the present controversy.

While the provision in question is put in the guise of a laundry regulation, it would seem to partake more nearly of the nature of a labor law, since it undertakes to restrict and limit the hours which may be devoted to the work of the laundry, not only by the employés, but by the employer as well. In this aspect it is closely akin in the considerations to which it gives rise to the statute involved in Lochner v. New York, supra. That was a statute attempting to limit the hours of labor in bakeries. The court, in construing the act, said:

"It is not an act merely fixing the number of hours which shall constitute a legal day's work, but an absolute prohibition upon the employer, permitting, under any circumstances, more than 10 hours' work to be done in his establishment."

It was held that the act could not be sustained, either as a labor law or as a regulation for the protection of the health of those employed in the class of labor involved; the court saying:

"The question whether this act is valid as a labor law, pure and simple, may be dismissed in a few words. There is no reasonable ground for interfering with the liberty of person or the right of free contract, by determining the hours of labor, in the occupation of a baker. * * * The law must be upheld, if at all, as a law pertaining to the health of the individual engaged in the occupation of a baker."

And after a consideration of the act in that aspect it is said:

"We think the limit of the police power has been reached and passed in this case. There is, in our judgment, no reasonable foundation for holding this to be necessary or appropriate as a health law, to safeguard the public health or the health of the individuals who are following the trade of a baker. If this statute be valid, and if, therefore, a proper case is made out in which to deny the right of an individual, sui juris, as employer or employé, to make contracts for the labor of the latter under the protection of the provisions of the federal Constitution, there would seem to be no length to which legislation of this nature might not go."

And answering the argument of the state that it was in its interest that its population should be strong and robust, and that legislation tending to that end must be valid as a health regulation, it is said:

"If this be a valid argument, and a justification for this kind of legislation, it follows that the protection of the federal Constitution from undue interference with liberty of person and freedom of contract is visionary, wherever the law is sought to be justified as a valid exercise of the police power. Scarcely any law but might find shelter under such assumptions, and conduct, properly so called, as well as contract, would come under the restrictive sway of the Legislature. Not only the hours of employés but the hours of employers, could be regulated, and doctors, lawyers, scientists, all professional men, as well as athletes and artisans, could be forbidden to fatigue their brains and bodies by prolonged hours of exercise lest the fighting strength of the state be impaired."

And finally it is said:

"It is manifest to us that the limitation of the hours of labor as provided for in this section of the statute under which the indictment was found, and the plaintiff in error convicted, has no such direct relation to and no such substantial effect upon the health of the employé as to justify us in regarding the section as really a health law. It seems to us that the real object and purpose were simply to regulate the hours of labor between the master and his employés (all being men, sui juris), in a private business, not dangerous in any degree to morals, or in any real and substantial degree to the health of the employés. Under such circumstances the freedom of master and employé to contract with each other in relation to their employment, and in defining the same, cannot be prohibited or interfered with, without violating the federal Constitution."

These considerations would seem to have close application to the regulation here sought to be enforced, and it is not readily to be perceived why the principles there stated should not be given controlling effect to render it void.

[7] But, accepting the provision strictly at its face value, as an act to protect the public against the dangers threatened from the maintenance of laundries, I think that it must be held void as an unreasonable interference with the liberty of the citizen in the prosecution of his occupation, and as having no real or substantial relation to the purpose sought to be accomplished; for it cannot be ignored that it has to do with a perfectly legitimate, harmless, and necessary business, one of which the late Justice Field, in In re Quong Woo, supra, aptly said:

> "But the business of a laundry—that is, the washing of clothing and clothes of various kinds, and ironing or pressing them to a condition to be used—is not of itself against good morals, or contrary to public order or decency. It is not offensive to the senses, or disturbing to the neighborhood where conducted, nor is it dangerous to the public safety or health. It would be absurd to affirm that it is."

Obviously, in view of the other features of the ordinance quoted above, the only menace intended to be met by this particular regulation is danger from fires. But to say that to obviate that danger it is reasonably necessary that the hours of labor in such an industry be curtailed to the narrow limits prescribed, and the business necessarily closed down, and that throughout the entire territory within the corporate limits of a city as large as San Francisco, with its not infrequent districts of partially or wholly unoccupied blocks and lots, where the maintenance of a laundry could give rise to no conceivable danger to the public from such source, is, on the face of it, to state an absurdity. It would be quite as reasonable to enact that by reason of the same danger all factories and industries within the city limits employing fires in their operation should be subjected to the same restrictions. Indeed, we might go further, and say that with as much reason the maintenance of fires in restaurants, eating houses, and hotels, in the kitchens and dwellings of the artisan and the laborer and of the inhabitants generally, should be limited to the hours between 7 o'clock in the morning and 6 o'clock in the evening. Such restrictions would at once be recognized as absurd and unreasonable; yet not only fire statistics, but common observation, teach us that in the life of a large city the difference in the degree of danger from fire to be apprehended from any one of these sources, as compared with another, is negligible. These things are to be regarded in determining the reasonableness of a regulation in its relation to the ostensible objects sought to be accomplished. If it has no such reasonable application to the conditions sought to be met, it will not stand, but will be recognized as an unauthorized interference with the liberty of the individual in the prosecution of the business or occupation affected. In this respect the suggestion in In re Wong Wing, that "many, perhaps a majority, of occupations, employments, and forms of business in San Francisco are conducted during less than 11 working hours a day," would seem to be a wholly immaterial consideration—a "milestone on the Dover road." It is not a question of comparison. The only pertinent consideration in such a case is whether the respect in which the particular business is interfered with is justified by the in-

terests of the public. If it is not, the interference is unauthorized, no matter how other and different kinds of business may be conducted.

Very clearly, if this provision of the ordinance be a valid exercise of the police power, it is difficult to foresee the point at which we should be enabled to say that the limit of the legislative power of the municipality has been reached. If such a restriction upon the right of the individual to prosecute a legitimate industry be reasonable under the facts disclosed in this bill, could it be said that a further restriction to 10, 8, or even a less number of hours would be less so? And the history of laundry regulation in San Francisco, as disclosed in the numerous cases arising therefrom, renders this no idle question. It is perhaps no exaggeration to say that this business has afforded a greater field for so-called police regulation than all other classes of business combined, and apparently with a progressive tendency to, constantly impose increased restrictions thereon. From an original requirement forbidding work in laundries during the period of 8 hours in the nighttime in certain limited districts, we find the period later increased to 11 hours, and it is now, by the present measure, sought to further increase this period of enforced idleness to 13 hours throughout the entire city, upon the theory that the public good demands it. I think we may aptly quote the language of the Supreme Court in Lochner v. New York, supra, where, with reference to the kindred regulation there under consideration, it is said:

"It is impossible for us to shut our eyes to the fact that many of the laws of this character, while passed under what is claimed to be the police power, for the purpose of protecting the public health or welfare, are in reality passed from other motives. We are justified in saying so when, from the character of the law and the subject upon which it legislates, it is apparent that the public health or welfare bears but the most remote relation to the law."

And I am of opinion, as there said, that "the limit of the police power has been reached and passed in this case," that the regulation under consideration has no such just or reasonable relation to the ostensible purpose for which it was put forth as will sustain it, and that it must therefore be held void. I have reached this conclusion with great reluctance, in deference to the contrary views expressed by the Supreme Court of the state in In re Wong Wing, supra, as to the validity of the similar provision there involved; but, these courts being clothed with concurrent jurisdiction with those of the state in the adjudication of questions involving the enforcement of rights guaranteed by the federal Constitution, I have nevertheless felt constrained, by the considerations stated above, to adhere to my own ultimate convictions.

It may be suggested that this conclusion will not affect the validity of the ordinance as a whole, nor the clause of section 9 relating to Sunday, which is not attacked. Not only is the provision here held void entirely separable in its effect from the other provisions of the ordinance, but the latter contains a section (11) which reads:

"The board of supervisors hereby declares that it would have passed this ordinance, and each section, subsection, subdivision, sentence, clause, and phrase thereof, irrespective of the fact that any one or more sections, subsec-

tions, subdivisions, sentences, clauses, or phrases is declared unconstitutional or invalid for any reason."

The motion to dismiss will accordingly be denied, and a decree may be entered herein declaring void and enjoining the enforcement of section 9 of the ordinance, excepting as to the Sunday clause, and that the plaintiff recover his costs.