EDWARD J. SINGER, REBA SINGER (His wife), SAMUEL KULOK and CONSTANCE KULOK (his wife), as partners doing business under the firm name of NATIONAL HOTEL and WILLIAM H. SIMON, v. BEN HOW REALTY, INC., a Florida corporation, MOR-

RIS SCHWARTZ, J. Y. GOOCH CO., INC., a Florida corporation, GEORGE E. BUNNELL, INC., a Florida corporation, GEORGE E. BUNNELL, NORMAN FERDARKO, W. L. McKINLEY and PHILIP E. ELLIS.

33 So. (2nd) 409            January Term, 1948
January 20, 1948                  Division B

*Broad & Cassel, Vincent C. Giblin* and *John D. Marsh,* for appellants.

*Abe Schonfeld* and *Kunkel & White,* for appellees.

BARNS, J.:

This is an appeal from a final decree wherein the chancellor sustained a motion to dismiss plaintiffs'-appellants' bill of complaint. The bill alleges that:

"The plaintiffs, Edward S. Singer, Reba Singer (his wife), Samuel Kulok and Constance Kulok (his wife), as partners, are the lessees and are in possession of" certain lots in Miami Beach and "a certain hotel building (designated and known as the National Hotel) and other improvements located on such lots. As such partners they operate and manage such hotel. The hotel is twelve stories in height and contains one hundred and fifteen guest rooms. The plaintiff partners also operate and manage, in connection with their hotel operations, a large swimming pool and twenty-two cabanas (which are also located on the described lots)."

The bill further alleges that the defendants are now engaged in the construction of a building adjoining the property

of the plaintiffs and that in such construction work now in progress a gasoline operated crane, pile drivers, excavators, jackhammers, drills and other similar equipment and apparatuses are being employed; that such construction work is being done within fifty feet of the nearest point of the National Hotel building; that in fact, it is being done within five feet of such point; that such work is, and has been continuously since it began on November 18, 1947, causing loud, intense and extremely annoying noises; that such work is being done, and has been done, daily between the hours of eight o'clock in the forenoon until five o'clock in the afternoon. Such work and the noises emanating therefrom have caused, and are causing, substantial and irreparable financial loss and damage to the plaintiffs.

The bill further alleges that:

"On December 4, 1946, approximately one-half of the one hundred and fifteen rooms of the National Hotel were occupied by guests. On the day of the filing of this bill only fifteen of such rooms are occupied by guests. The loss of patronage is due entirely to such work and such noises. Since such work began many guests have left such hotel to procure other and more desirable accommodations because of the annoyance occasioned by the dust and noises caused by such work; and because of such conditions many prospective guests, who otherwise would have patronized the National Hotel, have sought and obtained lodgings elsewhere. On November 17, 1947, the day before such construction work began meals were served in the hotel dining room to one hundred and fifteen patrons. Because of such dust and noises not more than eighteen persons, including hotel employees, have their meals in such dining room."

The bill further alleges that in 1937 the City of Miami Beach enacted a certain ordinance, to-wit: Ordinance No. 497, which said ordinance is in full force and effect, material portions of which are as follows:

"SECTION 3: RESTRICTED NOISES: Other noises, because of their nature and characteristics shall be grouped as follows for the purpose of control and restrictions:

"Group "A": Steam, Gasoline or oil operated cranes, pile-drivers, dredges, ditchers and all other similar machinery; one cylinder steam or internal combustion engine (horizontal or vertical); air compressors and pneumatic riveting machines, jack-hammers, drills and other similar air equipment; power band and circular saws working in the open; hand hammers on steel or iron (structural, rivets or otherwise) and all other noises of similar intensity and/or annoyance.

"Group "B": Stationery or portable concrete mixers (engines multi-cylindered and properly muffled); power band and circular saws, sanders, planers, grinding machines, drills, barbenders and cutters and similar machinery when enclosed; hand operations in connection with plumbing, electrical, roofing and framing work in the open.

"SECTION 4: (Amendment No. 637) PERIODS: For the purpose of controlling 'Restricted Noises,' the year shall be divided into two periods as follows:

"Period No. 1. Period No. 1 shall begin with and include November 16th and shall include and end with March 31st; which period being the months of greatest population shall be most restricted.

"SECTION 5: The 'Restricted Noises' set forth in Section 3 of this ordinance are hereby prohibited at a location and at any hour on Sundays and the hours on week days during which said 'Restricted Noises' of the various classifications, regardless of location, are hereby prohibited, are as follows:

| "Amendment No. 787 | Group "A" | Group "B" |
|---|---|---|
| During period 1 from | 5:30 P.M. | 5:30 P.M. |
| to | 9:00 A.M. | 9:00 A.M. |
| During period 2 from | 6:00 P.M. | 11:00 P.M. |
| to | 7:00 A.M. | 7:00 A.M. |

"SECTION 6: The 'Restricted Noises' included in Group 'A' and 'B,' as set forth in Section 3 of this ordinance, are hereby prohibited within fifty feet of the nearest point of any building occupied as a Hotel or apartment as defined in Ordinance No. 289 of the City of Miami Beach, Florida, at all hours during the period of time referred to and described in Section 4 of this ordinance as Period No. 1 (Amendment No. 787)."

The plaintiffs by their prayer sought an injunction enjoining the violation of the said ordinance by the defendants and prayed that the court accord to the plaintiffs such other and different relief as they may be entitled to under the circumstances.

The matter came on before the chancellor, upon the motion to dismiss, and the chancellor's decree was as follows:

"The Court is of the opinion, however, after hearing the arguments of counsel, that Section 6 of such ordinance is unreasonable and void, and for that reason it is accordingly ordered and decreed that the plaintiffs' bill of complaint be, and it is, dismissed at the cost of the plaintiffs."

It is our opinion that there is equity in the bill and that the said ordinance is not per se void and unconstitutional. Whether or not the defendants' constitutional rights would be violated by the enforcement of said ordinance is a matter to be determined after the defendants have answered or upon a more particular showing.

The decree appealed is reversed.

THOMAS, C. J., BUFORD and ADAMS, JJ., concur.