57 So.2d 855 (1952)
TOWN OF BAY HARBOR ISLANDS et al.
v.
SCHLAPIK.
Supreme Court of Florida, Division A.
March 28, 1952.
*856 Alvin Cassel, Miami Beach, for appellants.
Berick, Shapiro & Fried and Richard E. Gerstein and Samuel W. Fried, Miami Beach, for appellee.
THOMAS, Justice.
The chancellor, following the report of a special master which he confirmed, enjoined the appellants, the Town and the town officials, from enforcing Section 2 of Ordinance 30, and Section 6 of Ordinance 42 against the construction of a building on a certain lot of the appellee, but he specified that other parts of the ordinances, restricting construction to designated hours and days, were not to be affected by his ruling.
The first of these ordinances contained the provision "That during the period from December 1st, to and including March 31st, * * * the performance of construction work or erection of buildings within the Town * * *, shall be allowed only from 9 o'clock * * * in the morning, until 5:00 o'clock in the afternoon, of Monday to Friday, inclusive * * *." Up to this point it might be presumed that the council intended that during the season, noise incidental to construction work should be restricted to certain days of the week and certain hours of those days, but it is only a presumption, for the word "noise" is not even used. When the remainder of the section is added the sum is uncertainty, for it reads, "* * * that no performance of construction work or erection of buildings within the Town of Bay Harbor Islands shall be allowed on Saturdays, Sundays or legal holidays, and the same is hereby specifically prohibited, nor shall there be allowed, during said period of time, performance of construction work or erection of buildings * * * on land less than Seventy-five * * * feet from any existing single or multiple family structure, or hotel." (Italics supplied.) By the "period of time" was probably meant the months of December, January, February and March, but from the position of the phrase in the paragraph, such meaning is not too clear. Moreover, when the last clause is reached, real confusion is met, because it wasn't ordained that the building itself would have to be seventy-five feet away, but that the land on which it was to stand had to be that distance.
Both ambiguities were eventually recognized by the council, for they attempted to correct them by the second ordinance, No. 42, providing that certain defined noises be prohibited "* * * within seventy-five * * * feet of the nearest point of any building occupied as a hotel, apartment hotel, bungalow court or apartment building * * * at all hours * * *" during the period from 1 December to 31 March. This ordinance did not become effective, however, until 10 December 1951, eleven days after the temporary injunction, prototype of the final order, was entered.
Between ordinances it seems appellee had secured from the town a permit to build and had paid for the privilege; had obtained a "water permit" and builder's bond, paying the charges required for them. Also, materials had been delivered to the property by a building contractor; the building had been "laid out"; concrete foundation pilings had been driven; a tool shed had been erected; a contract had been made with another constructor for the erection of the building at a cost of approximately $67,000; a new and complete set of files had been filed with the Town; fabricated iron had been purchased; sub-contracts for electrical and plumbing work and materials had been executed; stoves and refrigerators for the apartments had been purchased; and the very day the second ordinance was passed *857 an application for a new permit had been filed, accompanied by a check for the necessary fee. Parenthetically, it was the master's view that the second permit was sought because of a provision of the building code that a permit would expire if work did not begin within 60 days or, once started, was suspended for that period, and that intermittent work, or work with less than 25% of the normal crew would be considered a suspension, or failure to commence, a situation that obtained here.
Meanwhile, 26 November 1951, an adjacent owner complained to the town authorities against the construction, and they ordered the work stopped.
At the time this suit was instituted an effort was being made to exercise in drastic fashion the police power under an ordinance that was obviously ambiguous. There is much evidence that the law was being generally ignored and, from a practical, if not a legal standpoint, enforcement simply meant that appellee, at the instigation or from the whim of a neighbor, was to be kept from driving a nail or laying a brick for four months, and would have to stand idly by until the last day of the following March while construction proceeded on other property around him.
The exercise of the police power, from its very nature, clashes with full enjoyment of property by its owner, and it is only because the welfare of the whole people so far outweighs the importance of the individual that this interference with constitutional guaranties can be justified. But certainly the need for the incursion must be clear, and in the circumstances we have recounted, there appears no justification for curtailing appellants' activities by the municipality.
Not only was the ordinance, source of the proscription, unclear, but even if it be given the interpretation for which the municipality contends, its terms were so harsh as to make the forbearance forced on the property owner entirely out of proportion to any benefit redounding to the public. For an arbitrary perior of one-third the year, an owner was prevented from improving his property because to do so might, presumably, create such noises as would annoy others.
We can only wonder what right the neighbor could present to a court in his own behalf that would fetch him a writ to prevent an adjoining owner from engaging in the legitimate activity of putting up a building, when, for ought we know, he was making no sound that would disturb anyone seventy-five feet away. The whole procedure smacks of protection of one person, or a relative few, without the community's being affected one way or the other.
We think the issuance of the injunction was thoroughly warranted. We need not discuss or decide the question of the hours to be observed because it is not directly in issue.
We have not overlooked or ignored the decision of this Court in Singer v. Ben How Realty, 160 Fla. 53, 33 So.2d 409. The facts in that case are materially different, and the ordinance there involved hardly resembles the one in effect, No. 30, in Town of Bay Harbor Islands at the time of the institution of this suit.
Affirmed.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.