Rye Municipal Court,
No. 5283.

## STATE *v.* JOHN A. GRANT.

Argued October 5, 1965.
Decided January 31, 1966.

2

*William Maynard*, Attorney General and *George S. Pappagianis*, Deputy Attorney General (*Mr. Pappagianis* orally), for the State.

*Wilfred L. Sanders, Jr.* (by brief and orally), for the defendant.

PER CURIAM. At common law and by statute, the duties of police officers and constables have long been those of "conservators of the peace." RSA 105:3; Sheriffs and Constables *s.* 3, 80 C.J.S. 154. At least as early as 1842 they were authorized to make regulations in the interest of public safety (R.S., *c.* 114, *s.* 7 (1842)), and in 1877 the Legislature extended the authority to regulations "for determining the time of night at which . . . eating-houses and restaurants shall be closed, and prohibiting the keeping open such places on the Lord's day." Laws 1877, *c.* 30; RSA 105:6. The right of a city to require by ordinance that restaurants should close after ten o'clock at night had then already been sustained in *State* v. *Freeman*, 38 N. H. 426 (1859), in part upon the authority of *State* v. *Clark*, 28 N. H. 176 (1854).

In *Goodrich Falls Company* v. *Howard*, 86 N. H. 512, 518, the court quoted with approval from *Clarke* v. *Rochester*, 28 N. Y. 605, 633: "But while general statutes must be enacted by the legislature, it is plain the power to make local regulations, having the force of law in limited localities, may be committed to other bodies representing the people in their local divisions, or to the people of those districts themselves. Our whole system of local government in cities, villages, counties and towns, depends upon that distinction. The practice has existed from the foundation of the state, and has always been considered a prominent feature in the American system of government." See also, *Marine Corps League* v. *Benoit*, 96 N. H. 423; *State* v. *Rogers*, 105 N. H. 366.

Under familiar principles, the presumptions favor the validity of ordinances and regulations adopted in the exercise of the police power pursuant to legislative authorization; and the burden of establishing the unconstitutionality of the regulation in this case is upon the defendant. *Musgrove* v. *Parker*, 84 N. H. 550, 551. See *Allen* v. *Manchester*, 99 N. H. 388. The wisdom of the measure is not a judicial question. *State* v. *Ramseyer*, 73 N. H. 31, 40. So long as the regulation is substantially related to the evil to be curbed, and not unduly restrictive of fundamental rights, its validity is to be upheld. *Id.*

The regulation here invoked applies equally to all restaurants and hence is not invalid as discriminatory. *Cf. Hart* v. *Teaneck Township*, 135 N.J.L. 174. See *Del Vecchio* v. *South Hackensack Twp.*, 49 N. J. Super. 44, 49. The nature of the evil sought to be remedied was disclosed by the evidence. Although no claim is made that the defendant dispensed intoxicants at his establishment, it appeared that in the comparatively short time that it had been in operation, "night after night" people who were drunk or were regarded by police as "undesirables" congregated there in the small hours, an assault had occurred upon the restaurant steps, neighbors were disturbed by noise, and "more than usual" trouble was encountered by police during early morning hours.

In finding that these conditions were "such as to render police supervision difficult and to afford an ineffective protection against . . . crime . . . the selectmen would be guilty of no abuse of discretion" in undertaking to prevent them. *Silverman* v. *Gagnon*, 74 N. H. 502, 503-504. See *State* v. *Cohen*, 73 N. H. 543.

While the measure adopted in this case concededly was not a health measure, it could be found to bear a substantial relation

to the maintenance of order and the protection of persons and property in the area. *Anton's of Reading, Inc.* v. *Reading,* 346 Mass. 575, 577.

We recognize that twenty-five years ago in considering an ordinance regulating the hours of closing of barber shops, the rule of *State* v. *Freeman,* 38 N. H. 426, *supra* was said to be "doubtful," "taking into account the changes in customs and ways of life." *State* v. *Paille,* 90 N. H. 347, 354. "The need of curfew laws is not as great. as it once was," the court then observed. *Id.* So today we may take note that further changes, manifested in public disturbances of recent date, now serve to cast doubt upon the quoted observation from more orderly times. See *Thistlewood* v. *Ocean City,* 236 Md. 548, (1964) upholding municipal curfew ordinance.

RSA 105:6 is held to be constitutional, and the regulation adopted pursuant to it is held to be a valid exercise of the powers conferred thereby. 7 McQuillin, Municipal Corporations (3d ed.) *ss.* 24.333, 24.334; *State* v. *Rogers,* 105 N. H. 366, *supra.*

*Remanded.*

KENISON, C. J., concurred in part.

KENISON, C. J., *concurring in part.* I concur in the judgment of the court that the statute (RSA 105:6) is constitutional. *State* v. *Rogers,* 105 N. H. 366.

To sustain the validity of the police regulation reliance is placed on the ruling in a case decided more than a century ago (*State* v. *Freeman,* 38 N. H. 426) which, it seems to me, was effectively distinguished out of existence by the unanimous decision in *State* v. *Paille,* 90 N. H. 347. However in the interest of impartiality resort is had to quotation rather than characterization. The quotation from *State* v. *Paille, supra,* 353-354 is as follows: "It is argued that upon the point of public morals the view here taken does not conform with the authority of *State* v. *Freeman,* 38 N. H. 426. There an ordinance of Dover requiring restaurants to be closed after ten o'clock at night was sustained. Restaurants were regarded as 'places of public entertainment,' and the ordinance was thought to be a measure promoting 'the common convenience and safety.' The court based its decision on the

authority of *State* v. *Clark*, 28 N. H. 176, a case in which an ordinance prohibiting the using or keeping of intoxicants in any 'refreshment saloon or restaurant' was held valid as being in the interest of 'public policy or morals,' and on the same standing as other laws 'enacted from a regard to the public peace and safety.' The view was thus taken that restaurants and liquor saloons had common attributes. . . . In view of the extent of the police power over the use and sale of intoxicants the analogy between restaurants and liquor saloons does not seem readily acceptable. Moreover, whether to-day, taking into account the changes in the customs and ways of life from those of nearly a century ago, such an ordinance as was upheld in the Dover case [*State* v. *Freeman*, 38 N. H. 426 (1859)] could be thought to be a reasonable interference with personal liberty of action in advancing some proper object of the exercise of the police power, is so doubtful as to be at least debatable."

In the sea of municipal law, *State* v. *Freeman*, 38 N. H. 426 (1859) is a tiny and lonely island. 7 McQuillin, Municipal Corporations (3d *ed.*) *s.* 24.333, note 17; Annot. 55 A.L.R. 242, 252; 1 Antieau, Municipal Corporation Law, *s.* 6.07(18)(1965); *City of Jackson* v. *Murray-Reed-Slone & Co.*, 297 Ky. 1. On the record before us as applied to the defendant, the reasoning in *State* v. *Paille*, *supra*, is preferable to that of *State* v. *Freeman*, *supra*, and more consistent with the later decisions in related cases involving municipal control. *State* v. *Moore*, 91 N. H. 16; *Hood & Sons* v. *Boucher*, 98 N. H. 399, 403; *Manchester* v. *Ideal Dairy*, 103 N. H. 361, 365.