JOHN FASINO AND CHERYL FASINO, tr/a SEVEN ELEVEN
STORE NO. 11461, PLAINTIFFS, v. MAYOR AND MEM-
BERS OF THE BOROUGH COUNCIL OF THE BOROUGH
OF MONTVALE, A MUNICIPAL BODY CORPORATE OF
THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 29, 1973.

*Mr. William Sellinger* for plaintiffs John Fasino and Cheryl Fasino, etc.

*Mr. Robert E. McGuire* for defendants Mayor and Council of the Borough of Montvale (*Messrs. Randall, Randall and McGuire,* attorneys; *Mr. Robert E. McGuire* on the brief).

PASHMAN, A. J. S. C. The question for decision is the constitutionality of an ordinance approved by Montvale.

The parties present this simple and undecided question: Is the ordinance of Montvale regulating opening and closing hours of retail business establishments valid?

█ My answer is no. This is not a constitutional exercise of the police power.

Plaintiffs are the owners and operators of a Seven-Eleven grocery store located within the Borough of Montvale. Their store is not a large supermarket but rather a small convenience store where customers can pick up last-minute items such as milk, eggs, orange juice, snacks, etc. Such stores have in effect taken the place of the local corner store. Plaintiffs, in order to meet the needs and desires of their customers, have recently decided to keep their store open 24 hours per day. They say that in remaining open plaintiffs are providing a needed service to the community.

The Borough of Montvale is a small community of 7500 primarily residential in character. In order to protect the peace and quiet of their community, to eliminate traffic noises during the night hours, and to lessen the hazards of nighttime crime, defendants have adopted the following ordinance:

AN ORDINANCE TO ESTABLISH HOURS OF OPENING AND CLOSING FOR RETAIL ESTABLISHMENTS IN THE MUNICIPALITY.

ARTICLE 1. Retail Businesses. Declaration of Purpose.

It is hereby declared to be the purpose of this Article to regulate the closing hours of various retail businesses within the Borough of Montvale in order to avoid the noise, inconvenience and disturbance

to residential areas within the Borough which are caused when retail establishments remain open during the late evening hours. It is hereby declared and determined to be in the best interests of the health, safety and welfare of the residents of the Borough of Montvale that the retail businesses regulated by this article cease the conduct of their business at a reasonable hour.

ARTICLE 2. Definitions. As used in this Article.

Retail Business means and includes any business which holds itself out to the general public for the sale at retail of goods and services.

ARTICLE 3. Closing Hours.

Every retail business within the Borough of Montvale shall be closed to the public, and business with the public therein shall be and is hereby prohibited after the hour of 11:00 P.M. and before the hour of 6:30 A.M. of any day. The provisions of this Section shall not apply to the sale of food and/or beverages sold exclusively for on premises consumption.

ARTICLE 4. All ordinances or parts of ordinances inconsistent with the provisions of this ordinance are hereby repealed to such inconsistencies.

ARTICLE 5. This ordinance shall take effect immediately upon publication after final passage and approval as required by law.

Plaintiffs challenge the validity of the ordinance on the grounds that:

(1) It is an arbitrary exercise of the zoning power;

(2) It is unreasonable and discriminatory as it applies to their business;

(3) There is no substantial relation to the public health, safety or welfare to justify the restrictions imposed on a legitimate business.

Montvale claims the ordinance is valid as a reasonable exercise of the police power to regulate businesses in order to protect the slumber of its residents by eliminating the noise, light and traffic that accompanies all-night retail operations. Defendants also contend that they are unable to provide adequate police protection to all-night establishments since Montvale has only two policemen on duty during the hours of 11 P.M. until 7 A.M.

*N. J. S. A.* 40:52–1(g) gives municipalities the power to license and regulate all businesses within its boundaries. It is perfectly clear that private business may be regulated

for the common good and welfare. *Nebbia v. New York,* 291 *U. S.* 502, 54 *S. Ct.* 505, 78 *L. Ed.* 940 (1934); *Barbier v. Connolly,* 113 *U. S.* 27, 5 *S. Ct.* 357, 28 *L. Ed.* 923 (1885); *Jones v. Haridor Realty Corp.,* 37 *N. J.* 384 (1962); *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960); *Masters-Jersey, Inc. v. Paramus,* 32 *N. J.* 296 (1960). However, it is equally clear that the particular regulation must bear a substantial relation to the public health, safety or welfare; otherwise there would be an unwarranted intrusion on the basic right of private property. *Brandon v. Montclair,* 124 *N. J. L.* 135, 142 (Sup. Ct. 1940), aff'd 125 *N. J. L.* 367 (E. & A. 1940); *Delawanna Iron & Metal Co. v. Albrecht,* 9 *N. J.* 424, 429 (1952). "It is requisite that the common welfare be advantaged to a substantial degree to justify the exercise of the police power." *N. J. Good Humor, Inc. v. Bradley Beach,* 124 *N. J. L.* 162, 168 (E. & A. 1940). As Justice Roberts, speaking for the United States Supreme Court, stated in *Nebbia v. New York, supra*:

The Fifth Amendment, in the field of federal activity and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. *It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts.* [291 *U. S.* at 525, 54 *S. Ct.* at 510, 511; emphasis added].

Justice Hall of our own Supreme Court has phrased this requirement as follows:

Where the police power has been granted to a municipal corporation, it is elementary that it can be exercised only in those areas where regulation is needful for the common good, i. e., public health, safety, morals or general welfare, and then only by reasonable means substantially connected with the public interest designed to be advanced. [*Moyant v. Paramus,* 30 *N. J.* 528, 544 (1959)]

See also *Mogelefsky v. Schoem,* 90 *N. J. Super.* 49 (App. Div. 1966), mod. 50 *N. J.* 588; *Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405 (1952).

Thus, it is our duty to determine whether this particular regulation is needful for the common good and that the means selected has a substantial relationship to the public interest to be advanced.

Defendants argue that New Jersey has taken the lead in approving ordinances designed to restrict the hours of operation of particular businesses. *Falco v. Atlantic City,* 99 *N. J. L.* 19 (Sup. Ct. 1923) (barber shops); *Wagman v. Trenton,* 102 *N. J. L.* 492 (Sup. Ct. 1926) (jewelry auctions); *Spiro Drug Service v. Union City,* 130 *N. J. L.* 1 (Sup. Ct. 1943), aff'd 130 *N. J. L.* 496 (E. & A. 1943) (drug stores); *Starkey v. Atlantic City,* 132 *N. J. L.* 27 (Sup. Ct. 1944) (drug stores); *Amodio v. West New York,* 133 *N. J. L.* 220 (Sup. Ct. 1945) (barber shops); *Tonsorial Inc. v. Union City,* 115 *N. J. Super.* 33 (Law Div. 1971) (barber shops).

Likewise, the highest courts of other jurisdictions have upheld closing hours for certain types of businesses. *Barbier v. Connolly,* 113 *U. S.* 27, 5 *S. Ct.* 357, 28 L. Ed. 923 (1884) (laundries); *Soon Hing v. Crowley,* 113 *U. S.* 703, 5 *S. Ct.* 730, 28 L. Ed. 1145 (1885) (laundries); *Ratliff v. Hill,* 293 *Ky.* 36, 168 *S. W.* 2d 336 (Ct. App. 1943) (road house); *People v. Raub,* 9 *Mich. App.* 114, 155 *N. W.* 2d 878 (App. Ct. 1968) (car wash); *State v. Grant,* 107 *N. H.* 1, 216 *A.* 2d 790 (Sup. Ct. 1966) (eating places); *Gibbons v. Chicago,* 34 *Ill.* 2d 102, 214 *N. E.* 2d 740 (Sup. Ct. 1966), *cert. den.* 385 *U. S.* 829, 87 *S. Ct.* 63, 17 L. Ed. 2d 65 (1966) (coin operated laundries).

However, an even greater number of courts have held specific regulations invalid. *Yee Gee v. San Francisco,* 235 *F.* 757 (N. D. Cal. 1916) (laundries); *Perry Trading Co. v. Tallahassee,* 128 *Fla.* 424, 174 *So.* 854 (Sup. Ct. 1937); *Ex Parte Harrell,* 76 *Fla.* 4, 79 *So.* 166 (Sup. Ct. 1918) (all places of business); *Olds v. Klotz,* 131 *Ohio St.* 447, 3

N. E. 2d 371 (Sup. Ct. 1936) (groceries); *Dave Abrams Inc. v. City of Buffalo,* 276 *N. Y.* 494, 12 *N. E.* 2d 174 (Ct. App. 1937), aff'g 250 *App. Div.* 820, 296 *N. Y. S.* 446 (App. Div. 1937) (shoe stores); *Town of McCool v. Blaine,* 194 *Miss.* 221, 11 *So.* 2d 801 (Sup. Ct. 1943) (grocery stores); *Justesen's Food Stores, Inc. v. Tulare,* 12 *Cal.* 2d 324, 84 *P.* 2d 140 (Sup. Ct. 1938) (food stores); *Coalicook v. Lathrop,* 22 *Quebec C. S.* 225 (Quebec 1902) (all shops); *Saville v. Corless,* 46 *Utah* 495, 151 *P.* 51 (Sup. Ct. 1915) (all commercial establishments); *Good Humor Corp. v. Long Beach,* 22 *N. Y. S.* 2d 382 (Sup. Ct. 1940) (ice cream vendors); *People v. Kuc,* 272 *N. Y.* 72, 4 *N. E.* 2d 939 (Ct. App. 1936) (newspaper hawking); *Goodin v. Philadelphia,* 222 *Miss.* 77, 75 *So.* 2d 279 (Sup. Ct. 1954) (all places of business); *Town of Dyess v. Williams,* 247 *Ark.* 155, 444 *S. W.* 2d 701 (Sup. Ct. 1969) (all places of business).

The foregoing is not intended to be exhaustive of the subject, but it appears that the majority view is that ordinances which restrict hours of business operation are invalid. Further, a close examination of the cases both in our State and in other jurisdictions which have upheld such ordinances will reveal that those specific businesses that were regulated presented a clear danger to the public health or safety or both. Thus, in the first case in our State upholding such regulation, *Falco v. Atlantic City, supra,* it was stated:

> The fruitfulness of many barber shops as spreaders of certain forms of contagious disease is a matter of common knowledge, and the power of the state and its subordinate agents to provide for licensing, regulation, and inspection of such places in the interest of the public health cannot be doubted. * * *
>
> Barber shops are public places, frequented by all classes. Sanitary supervision thereof is very generally regarded as necessary * * *.

That court in 1923 found that the health hazards inherent in barber shops necessitated regulation of their hours of operation to protect the public health. And when the validity of barber shop closing legislation was again attacked

in *Amodio v. West New York*, 133 *N. J. L.* 220 (Sup. Ct. 1945), it was held that such regulation is "necessary in order to protect the general welfare and health of persons working in barber shops." (at 222). After pointing out the hazards of communicable diseases, our former Supreme Court went on to say:

[Barbering] is an occupation intimately identified with the public health; and consequently it is subject to regulation in the common interest. * * *

Wednesday afternoon and holiday closings compensate for the long hours of service on the other work days; and it is therefore a measure aimed to foster the health of the workers, and thus to advance the essential public interest. [at 224]

In *Amodio* there was no challenge to the constitutionality of *N. J. S. A.* 40:52–1(k) which specifically empowered municipalities to regulate "the hours of opening and closing on weekdays" of barber shops. 133 *N. J. L.* at 223. These reasons were recently reiterated in *Tonsorial Inc. v. Union City*, 115 *N. J. Super.* 33 (Law Div. 1971).

The two cases dealing with regulation of drug store hours in our State were specifically decided on the grounds that wartime emergencies and the shortage of pharmacists due to the draft necessitated mandatory closing hours to provide respite for druggists and to protect the public from mistakes in filling prescriptions by overworked pharmacists. *Spiro Drug Service Inc. v. Union City*, 130 *N. J. L.* 496 (E. & A. 1943), aff'g 130 *N. J. L.* 1 (Sup. Ct.), and *Starkey v. Atlantic City*, 132 *N. J. L.* 27 (Sup. Ct. 1944).

In *Wagman v. Trenton*, 102 *N. J. L.* 492 (Sup. Ct. 1926), an ordinance forbidding auction sales of jewelry between the hours of 6 p.m. and 8 a.m. was upheld as necessary to protect the public from fraud by the use of artificial lights at night and to protect against the previous experience by customers carrying away their purchases of being robbed. At 494.

Other cases have also turned on a finding of some specific, direct relationship to the public health or safety as required by the cases cited earlier, such as *Nebbia v. New York, supra,* and *Moyant v. Paramus, supra,* etc. The validity of an ordinance regulating the hours of operation of street vendors was upheld as necessary for "the welfare of the vendors themselves, the protection of the peace and comfort of the community during the night, and that at night pedestrians are more difficult to see. People going to and from the vehicles of [ice cream] vendors stopped on the public roadways are endangered by this lack of visibility." *Mister Softee v. Hoboken,* 77 *N. J. Super.* 354, at 374 (Law Div. 1962).

An examination of the cases cited above from other jurisdictions will similarly reveal direct and specific relation to the public health or safety. Thus, the United States Supreme Court in *Barbier v. Connolly, supra,* and *Soon Hing v. Crowley, supra,* upheld ordinances of the City of San Francisco closing laundries located in certain districts at night because of the danger to the closely compacted wooden buildings of those districts from the open fires used at that time in the laundry business. However, when the same restrictions imposed by the ordinance were extended to the entire San Francisco peninsula, they were held invalid since the open spaces of the county did not require the same protection as the compacted wooden buildings of the city. *Yee Gee v. San Francisco, supra:*

The question here presented is whether, without regard to the existence of such conditions [fire or health hazards], a municipality may impose a general limitation or restriction upon the citizen as to the hours within which he may prosecute his chosen industry — a respect to which independently of particular conditions, there is obviously no natural or inherent menace to the public — without trenching upon that degree of freedom and liberty of action guaranteed him by the Constitution. [235 *F.* at 763]

That court went on to answer this question resoundingly in the negative:

For that neither a municipality nor the Legislature of a state may competently interfere under the guise of a police regulation with the liberty of the citizen in the conduct of his business — legitimate and harmless in its essential character — beyond a point reasonably required for the protection of the public, is too thoroughly settled to call for any extended citation of authority in its support. [at 763]

It appears that substantially all the closing hour regulations point up the relationship between dangers to the public and the business regulated. *In Ratliff v. Hill, supra,* the Kentucky Court of Appeals based its holding on the inherent danger to public morals from unregulated road houses and bars located in districts outside of city limits and therefore not under the regular police supervision of any community. In *State v. Grant, supra,* the New Hampshire Supreme Court upheld an ordinance closing all eating places from midnight to 6 a.m. since it was nondiscriminatory (citing *Hart v. Teaneck,* 135 *N. J. L.* 174 (E. & A. 1947)) and the obvious connection of public eating places to the public health (food contamination, for example) and to protect the public peace and order (drunks and rowdies were congregating at all-night eateries resulting in complaints of fights, noise and trouble-making).

*People v. Raub, supra,* involved a mechanical car wash which in the ordinary course of operation produced large amounts of noise which disturbed the surrounding residents. And *Gibbons v. Chicago, supra,* upheld closing of coin-operated laundries after 11 p.m. because of the inherent danger of fire from overloaded dryers or washers during the late night and early morning hours when such places were usually left unattended, the danger of spread of contagious disease if the machines were not operating at a high enough temperature, the risk of injury to unsupervised customers, and the high incidence of crime at such unattended establishments.

In the present case we are asked to invalidate an ordinance restricting the hours of every business in the community with the minor exception of establishments where there is

consumption of food and drink on the premises. The hours of service of most of the latter are regulated under the Alcohol Beverage Law, *N. J. S. A.* 33:1-39 and 33:1-40. In effect, therefore, the ordinance adopted by defendants is a general closing law. Despite briefing by the parties and extensive research by the court, we have not found any case which has upheld a general closing law. On the contrary, numerous authorities have flatly stated that such regulation is invalid.

[L]aws requiring businesses of a purely mercantile and commercial nature to close at a specified time have been held to be unconstitutional under the principle that a regulation of the hours during which a business may be operated cannot be justified on the theory that it was passed under the police power, where the regulation does not directly or remotely tend to benefit the public health, morals, safety, or general welfare. A particular lawful business in no wise noxious cannot be regulated as to closing hours while other lawful businesses are left unregulated. [16 *Am. Jur.* 2d Constitutional Law § 325; citations omitted].

[A] municipality has no authority, under its police power, to regulate arbitrarily and unreasonably the hours of private business, conducted in a reasonable manner, under the guise of promoting the public health or general welfare of the community. Laws which regulate closing hours and do not in any manner directly or remotely tend to promote public health, safety, good order and peace of the community cannot be justified as an exercise of municipal police power. [56 *Am. Jur.* 2d, Municipal Corporations § 474; citations omitted]. See also 55 *A. L. R.* 242 *et seq.* and 98 *A. L. R.* 1088 *et seq.*

And McQuillin, in his multi-volume treatise on municipal corporations, states:

Without doubt, an ordinance regulating the hours during which a business may be operated which does not tend to benefit the public health, morals, safety or general welfare, cannot be justified on the theory that it was passed under the police power. *Yee Gee v. San Francisco,* 235 *F.* 757 (*N. D. Cal.* 1915) ; *Jackson v. Murray-Reed-Sloane & Co.,* 297 *Ky.* 1, 178 *S. W.* 2d 847 (1944). [*McQuillin, Municipal Corporations* (3d ed.) § 24.328.]

No police regulation should be allowed to interfere with the enjoyment of individual rights beyond the necessities of the case. [*McQuillin, op. cit.,* § 18.17]

Numerous courts have agreed with these general principles as discussed.

In a more recent case the Supreme Court of Mississippi held that a city ordinance making it a crime to operate any business establishment after 10 p.m., in absence of a showing that the ordinance was necessary for preservation of good order and peace of the municipality, was invalid since a municipality cannot arbitrarily and unreasonably regulate hours of private business under the guise of promoting the public health or general welfare. *Goodin v. City of Philadelphia,* 222 *Miss.* 77, 75 *So.* 2d 279 (Sup. Ct. 1954).

Montvale's ordinance is very similar in that it restricts substantially every business without regard to its individual effect on the public health, safety, morals, or general welfare.

The case of *Olds v. Klotz,* 131 *Ohio St.* 447, 3 *N. E.* 2d 371 (Sup. Ct. 1936), like the one under consideration, involved an attempt to regulate the hours of operation of retail food and grocery stores. Ohio, like New Jersey, had previously upheld such regulation of barber shops because of consideration of morals and safety. *Wilson v. City of Zanesville,* 130 *Ohio St.* 286, 199 *N. E.* 187 (1935). In a long discourse, the Supreme Court of Ohio distinguished the businesses involved and said:

It is important to keep in mind certain fundamental differences between a barbershop and a retail grocery store. The barbershop is a place where services rendered are of a personal nature. The cutting and shampooing of the hair and the shaving and massage of the face are the most common. All of these are performed in the home, some measurably, others extensively. They are not absolute essentials. On the contrary, places for distribution of foodstuffs are wholly necessary in order to furnish daily nourishment to the masses of our people. Wisely, laws have been enacted to assure the purity and wholesomeness of food; but the limitation of hours that products of that kind may be sold by retail to the public seems to be of minor consideration in relation to the public health in comparison with the necessity of having food available at the time it may be required to supply pressing human want. Food is vital to health, and even to life itself. Its need for nourishment to sick and well, to adult and child, is quite as pressing a consideration from a health standpoint, as that which requires that food be retailed in stores under

conditions which are consonant with proper requirements of sanitation. *All the authorities seem to be in accord with the proposition that the police power does not extend to the limitation of hours within which retail stores, selling either groceries or other commodities or both, may be kept open to customers. Every business has some relation to the general welfare, because there is none which is operated to supply consumers generally that does not have some public aspect; but the regulation thereof is not within the police power unless the relation to the public interest and the common good is substantial and the terms of the law or ordinance are reasonable and not arbitrary in character.* The exercise of the police power is inherent in government and essential to its existence and inevitably comes into conflict with the constitutional guaranties of the right of property and liberty of contract. In each case presented the court must draw the line of demarcation. Courts do not attempt to define police power with exactness, and inevitably the individual case must stand upon its own footing. [3 *N. H.* 2d at 373; emphasis added]

Defendants have basically urged two grounds for sustaining the police power in this instance. First, that Montvale's ordinance is necessary to protect the peace and quiet of their community; that traffic going to and from the plaintiff's place of business during the early morning hours will disturb the slumber of residents adjacent to the property of plaintiff; that business results in loud voices which carry at night, and that glare radiates from electric signs and parking lot lights.

Municipalities may lawfully regulate the erection of signs and lights or buildings. Likewise, they have wide discretion in regulating traffic on their streets. However, there is no necessity to correct these problems by a general ordinance regulating business hours. Neither can a general ordinance be justified by these problems at one location. Such regulation is void as overbroad in its sweep. More appropriate legislation would have been directly aimed at the detriment perceived by the defendants, *i. e.,* direct regulation of traffic speed on local streets, direct prohibition of glaring lights, or prohibition of raucus noises. With regard to the last-mentioned item, see *Kovacs v. Cooper,* 366 *U. S.* 77, 69 *S. Ct.* 448, 93 L. Ed. 513 (1949), and *Gundaker Central Motors v.*

*Gassert,* 23 *N. J.* 71 (1956), where ordinances restricting disturbing noises were upheld.

In any event, the reasons advanced by Montvale to sustain the ordinance in question were specifically rejected by the Supreme Court of Arkansas in *Town of Dyess v. Williams,* 247 Ark. 155, 444 *S. W.* 2d 701 (1969). In that case an ordinance closing all places of business from midnight to 4 a.m. was passed and justified because of teenage patronage, horn blowing and traffic noises. The Supreme Court stated:

> It is evident that the town's purpose could readily be accomplished by the enactment of an ordinance directly prohibiting the objectionable conduct. There is no need for the town to attain its objective indirectly by closing all places engaged in lawful business after midnight. * * * Here, too, the sweep of the ordinance goes too far beyond the necessities of the situation. [Discussion by the court of *Goodin v. Philadelphia, supra,* is omitted].

The second basis urged by defendants to sustain the subject ordinance is the inability of the municipality to provide adequate police coverage for plaintiffs' store during the late night and early morning hours. Defendants assert that the incidence of crime is greatest during such hours when the majority of people are not up and about. They claim that their police force has only two members on duty during such hours. Consequently, it is unable to adequately cope with the problem of crime and adequately provide coverage for the shopkeeper, customer and homeowner.

This reasoning must be rejected as fallacious. One of the prime motivations for individuals to coalesce and subject themselves to governmental control is protection from the criminal element. It is one of the prime duties of governments to provide police protection. There is no justification for closing otherwise harmless businesses because the community otherwise may be forced to expend additional resources to provide adequate protection.

When this precise argument, inability to provide police protection, was raised to justify an ordinance of a small

town having only two policemen which attempted to close all places of business between the hours of midnight and 4 a.m., the highest court of Kentucky rejected it.

> The business of the restaurant involved in the instant case has no potential influences detrimental to public morals, but it is a useful and necessary business properly operated and we are unable to see how the closing of it between midnight and 4 A.M. would affect the health, morals, safety or welfare of the citizens of Jackson. Therefore we conclude that the ordinance is arbitrary and unreasonable and violates §§ 1 and 2 of our Bill of Rights.
>
> *The fact that the city may have to go to more expense in policing the town at night should business be transacted at late hours is no reason for sustaining the ordinance.* It might as well be said that an ordinance closing a respectable mercantile establishment during the afternoon hours would be constitutional because such a business attracts crowds into the town which require more policemen to handle when such a house is operating than when it is closed. [*Jackson v. Murray-Reed-Sloane & Co.*, 297 *Ky.* 1, 178 *S. W.* 2d 847, 848 (Ct. App. 1944) ; emphasis added]

Brief further observations as to the foregoing objections to the ordinance may be in order. The issues seem to be (1) the relation between business health and public health, and (2) crime prevention. There is a third issue which I hold to be irrelevant, namely, aesthetics (or theologics).

(1) The relation between business health and public health is particularly strong in the climate of unemployment. It is surely in the public interest to encourage any opportunity for increased employment. Supermarkets, especially, since they generally employ the lower income groups, can serve a key function in the economic rehabilitation of this sector.

In a deeper sense, the philosophically relevant issue is the tradition of capitalism founded on an enlightened *laissez faire* concept, *i. e.*, let business alone, free it to expand provided its expansion does not limit or encroach upon the legal rights, the freedom and happiness of others. It seems clear that lengthening hours can only increase freedom and hap-

piness, first of employees of the store and second of customers, making it more convenient to make needed purchases.

(2) The only ground on which freedom and happiness might be infringed is if late hours led to increased crime. My feeling is that the opposite is probably the case. Crime is less likely in well-lighted and active busy areas, and so late closing should reduce the period in which crime is most likely to occur. If this is so, there seems to be no justification on this score for the municipal regulation of closing hours.

(3) Finally, aesthetics (public artistic taste) and theologics (public religious tastes, *e. g.,* Sunday blue laws) are irrelevant. If aesthetic taste allows a supermarket to be built in a given area, then it is no more distasteful at one time than at another. Religious reasons are irrelevant at this time on the general principle that the highest courts have settled the Sunday closing controversy. That is no longer subject to further argument.

Neither the Constitution nor the police power secures the right to conduct a business which injures the public at large. If any lawful business does become harmful to that public because of the manner in which it is conducted, a governmental entity has a right to provide safeguards. But government may not, under the guise of protecting the public, arbitrarily interfere with private business or impose unreasonable restrictions. If the regulation does not directly or even remotely benefit the public health, safety or general welfare, it cannot be justified.

From all of the above it is clear that the ordinance of the Borough of Montvale requiring all businesses to close from 11 p.m. to 6:30 a.m. is an invalid exercise of the police power. There is no substantial relationship to the public health, safety, morals, or general welfare. The ordinance violates the due process clause of the Fourteenth Amendment of the United States Constitution.