QUESTION:
To what constitutional limitations is a municipality subject when it attempts to restrict the business hours of restaurants, gasoline service stations, and grocery stores presently operating on a 24 hour daily basis?
SUMMARY:
The question of a municipality's right to regulate the hours of business operation of retail businesses pursuant to its police power depends upon whether the regulation is required for the public health, morals, peace, safety, or welfare and whether the regulation is reasonable and substantially connected with the public interest sought to be served.
The issues raised by your request deal with the authority for and limitations on a local government's exercise of its police power to prescribe regulations for the conduct of lawful retail businesses in the interest of the public peace, health, morals, safety, or welfare.
The Fourteenth Amendment to the United States Constitution, applicable to the states, provides that no person may be deprived by the state of life, liberty, or property without due process. Section 9, Art. I, State Const., contains a similar provision. As a general proposition, due process of law is deprived by arbitrary or unreasonable regulations of hours or days of business which such regulation serves no public purpose. Reasonable prohibitions upon doing business at such hours as are injurious to the public health, however, do not result in a violation of the due process clauses of either the Florida or the United States Constitution.See 16A C.J.S. Constitutional Law s. 671 and cases cited therein;see also 16 Am. Jur.2d Constitutional Law s. 325 and cases cited therein; and see discussion in Wednesday Night, Inc. v. City of Ft. Lauderdale, 272 So.2d 502 (Fla. 1972); Robbins v. Webb's Cut Rate Drug Co., 16 So.2d 121 (Fla. 1943); State v. Ives.167 So. 394 (Fla. 1936).
It is undisputed that an individual has an inherent right to engage in a lawful business or trade. It is also axiomatic, however, that a municipal corporation (as an arm of the state) may impose reasonable restrictions upon the conduct of such activities in the interest of the public peace, health, morals, or general welfare, so long as such regulation is exercised reasonably, within constitutional limitations, not arbitrarily, and not in such a manner as to restrain trade or to unfairly discriminate. Of course, a municipality may not, under the guise of protecting the public, arbitrarily interfere with, or unnecessarily restrict, a lawful business or occupation. In every case, a court, to determine the validity of certain regulations as applied to certain business, must consider both the general character or scope of the business and whether the limitations on its conduct have a reasonable relation to a legitimate public purpose. See 62 C.J.S. Municipal Corporations ss. 234-236, and cases cited therein. See also Griffin v. Sharpe, 65 So.2d 751 (Fla. 1953), and Wiggins v. Jacksonville, 311 So.2d 406 (1 D.C.A. Fla., 1975).
Clearly, the issue of constitutional limits on the exercise of the police power to regulate the conduct of business in the interest of the public defies an easy or `black-letter' answer. Since the answer to your request would depend so heavily upon the facts and reasons behind the particular restrictions proposed, and since, of course, the courts are the final judges as to what are proper subjects of the police power, I can only attempt in this opinion to set forth general guidelines concerning exercise of the police power in the manner contemplated by your letter. As stated by the Florida Court in Miami v. Shell's Super Store, Inc., 50 So.2d 883
(Fla. 1951), the authorities touching the power of municipalities to enact and enforce regulations such as the proposed restrictions do not all point the same way.
In many instances where regulations restricting business hours have been upheld, it is because the court has found a link between the type of business regulated and the health or safety of the public. For instance, several cases have dealt with regulation of business hours of barbershops, a type of business which is subject to strict regulation in any event for protection of the public against contagious diseases. In Amodio v. West New York,43 A.2d 889 (N.J. 1945), the New Jersey Supreme Court upheld regulation of business hours as `necessary in order to protect the general welfare and health of persons working in barber shops' who are apparently more vulnerable to contagious diseases if they work long, exhausting hours (id. at 891, 892). The Florida Supreme Court, however, has held that regulation of barbers can go to `competency of the barbers, sanitation and protection of the public against the spread of communicable disease' and that so long as it is confined to those subjects it is valid, but otherwise such regulation of business hours is `apt to be an unreasonable restriction on one's right to engage in a lawful business and make an honorable living.' Miami v. Shell's Super Store, Inc., 50 So.2d 883, 884 (Fla. 1951). Cf. Robbins v. Webb's Cut Rate Drug Co., 16 So.2d 121 (Fla. 1943), and State v. Ives,167 So. 394 (Fla. 1936), cited in Shell's Super Store for the proposition that if it becomes necessary for the health or safety of barbers or the public, closing hours or any other reasonable regulation may be imposed.
Regulation of business hours has also been upheld in numerous other instances based upon the type of business involved. In Connecticut v. Gordon, 125 A.2d 477 (1956), the Connecticut Supreme Court of Errors upheld a regulation forbidding auction sales after 6:00 p.m. The court found that such businesses usually involve itinerant salespersons who conduct auctions on an infrequent enough basis that great crowds of people are brought together for relatively short periods of time. The court noted that `[w]henever crowds of people congregate, especially after dark, whether at regular or irregular periods, problems of safety, health and morality which affect orderly and peaceful living are created' (id. at 481) and that the local regulation in question was a reasonable means of dealing with these attendant problems. Likewise, several cases have upheld regulation of business hours when the business involved is of a coin-operated, unsupervised nature, e.g., coin laundries or car washes. In People v. Raub,155 N.W.2d 878 (Ct.App. Div. 1 Mich. 1968), the court upheld the conviction of the owner of a self-service car wash for violating a city ordinance prohibiting operation of such businesses between 10 p.m. and 7 a.m. The court found the ordinance valid since it was based upon protection of the public safety and welfare. The record apparently showed that such businesses are conducive to `rowdiness, `gang' groupings, and like activity.' Specifically, residents in the vicinity of defendant's business complained of excessive litter, noise, beer drinking, and other disturbances at late evening and during early morning hours. The court also determined in upholding the ordinance that it was not violative of equal protection by singling out only certain types of business. It found specifically that it was the unsupervised nature of such coin-operated businesses that resulted in the evils sought to be cured by regulation, indicating that a supervised car wash at a service station, e.g., could not be similarly regulated. See also,e.g., Gibbons v. Chicago, 214 N.E.2d 740 (Ill. 1966), cert. denied385 U.S. 829 (1966); Township of Little Falls v. Husni,352 A.2d 595 (N.J. 1976).
My research has revealed, however, that the greater number of the courts considering restrictive business hour regulations have held them invalid. As a general rule, and especially with regard to retail establishments, it can be said that a community must show a very clear need, based upon problems which attend operation of a certain type of business in a particular community at certain times of the day, before such regulations are held valid. The Florida Supreme Court has so held in Ex Parte Harrell, 79 So. 166
(Fla. 1918), which involved a Tallahassee ordinance requiring all places of business selling `goods, wares, and general merchandise' to close by 6:30 p.m. The city defended the ordinance by saying only that it was necessary to conserve the public health, morals, and safety. The court found on the contrary that the regulation does not `in any manner, directly or remotely, even tend to promote public health, public morals, the public safety, or the good order and peace of the community; but, on the contrary, we think that the provision . . . is an unwarranted governmental interference with the personal rights of the merchant class of the citizens of the town . . . .' Id. at 167. See also Perry Trading Co. v. City of Tallahassee, 174 So. 854 (Fla. 1938); City of Miamiet al. v. Shell's Super Store, Inc., supra; and cf. Zaconik v. City of Hollywood, 85 F. Supp. 52 (S.D.Fla. 1949), holding that where a retail business adopted a method of effecting sales embracing some of the features of public auction sales but differing in certain respects, application of an ordinance prohibiting the safe of certain goods after 6 p.m. to such retail business and its method of doing business would be violative of rights guaranteed by the Federal Constitution.
A number of courts have held, even if the municipality can show that crime control and other problems result when a certain business operates on a 24-hour basis, that regulation of business hours cannot be upheld. A leading case is Fasino v. Borough of Montvale, 300 A.2d 195 (N.J.Sup.Ct. 1973), in which the court found unconstitutional an ordinance requiring retail and grocery stores to be closed during the hours from 11 p.m. to 6:30 a.m. The town advanced two reasons to support its ordinance: It eliminates noise, light, and traffic that accompany all-night operations and it fosters more effective law enforcement of an area with an inadequately staffed police department. The court rejected both arguments as insufficient to justify the regulation. The right of individual business persons to operate unfettered by regulation was seen as too fundamental to yield to any but a very clear public need for such regulation. The court concluded, therefore, in response to the first basis advanced by the town for its ordinance, that `more appropriate legislation would have been directly aimed at the detriment perceived by the [town], i.e., direct regulation of traffic speed on local streets, direct prohibition of glaring lights, or prohibition of raucous noises.'Id. at 202; accord: Dyess v. Williams, 444 S.W.2d 701 (Ark. 1969), in which the Arkansas Supreme Court said, `There is no need for the town to attain its objective indirectly by closing all places engaged in lawful business after midnight. . . . [T]he sweep of the ordinance goes too far beyond the necessities of the situation.' Id. Cf. Singer v. Ben How Realty, 33 So.2d 409 (Fla. 1948), holding that an ordinance prohibiting the use of machines emanating annoying noises during certain periods of week days and at any hour on Sundays was not per se void and unconstitutional.
As to the second argument, the court found that the town simply could not attempt to solve the problems of an inadequate police force by regulating legitimate businesses so as to reduce the need for such protection. In effect, the court found that the public had a right to adequate police protection and that the town could not use a restrictive ordinance on business to avoid the additional expense that would be required to provide it. See also
Jackson v. Murray-Reed-Sloane and Co., 178 S.W.2d 847 (Ct.App. Ky. 1944).
It should be noted that the same reasons advanced by the court inFasino to hold a closing ordinance unconstitutional might also be applied to coin laundries, car washes, barbershops, auctions, etc., all discussed above; i.e., it is arguable in regard to such businesses that the town has no power to enact closing ordinances to control indirectly the problems caused by the operation of such businesses. Yet, Fasino apparently viewed with favor the cases upholding restrictive ordinances regulating such businesses. It distinguishes its own situation largely based upon the fact that it involved a retail establishment selling food and other essential items. The court noted that such stores serve a valuable community interest by providing basic human needs. The court quoted at length from Olds v. Klotz, 3 N.E.2d 371, 373 (Ohio 1936), in which the Ohio Supreme Court said:
 Food is vital to health, and even to life itself . . . . All the authorities seem to be in accord with the proposition that the police power does not extend to the limitation of hours within which retail stores, selling either groceries or other commodities or both, may be kept open to customers. Every business has some relation to the public welfare . . .; but the regulation thereof is not within the police power unless the relation to the public interest and the common good is substantial and the terms of the law or ordinance are reasonable and not arbitrary in character. (Emphasis supplied.)
A number of cases in other jurisdictions have also struck down regulations applied to food and other retail stores. See, e.g., Town of McCool v. Blaine, 11 So.2d 801 (Miss. 1943); Goodin v. Philadelphia, 75 So.2d 297 (Miss. 1954); Justesen's Food Stores, Inc. v. Tulane, 84 P.2d 140 (Cal. 1938).
Your letter also specifically addresses itself to the question of business hour regulation regarding restaurants and service stations. In State v. Grant, 216 A.2d 790 (N.H. 1965), the New Hampshire Supreme Court was faced with an ordinance requiring all restaurants to be closed between midnight and 6 a.m. The court upheld the ordinance, finding that the record established that all-night restaurants fostered excessive noise and other similar disturbances, and hence that the regulation `could be found to bear a substantial relation to the maintenance of order and protection of persons and property in the area.' See also
Burlington v. Jay Lee, Inc., 290 A.2d 23 (Vt. 1972), in which the Vermont Supreme Court reached essentially the same conclusion in regard to a similar ordinance. But cf. Goodin v. Philadelphia,75 So.2d 279 (Miss. 1954), in which the Mississippi Supreme Court struck down a business hour ordinance challenged by a restaurant owner but directed to all businesses. The court, however, noted that its decision was based upon the lack of a showing that there was `a causal relationship between this sweeping ordinance and [the preservation of good order and peace of the municipality] . . . . It makes no distinction between the good and the bad.'
Research has revealed only one case involving regulation of business hours for service stations. Such a regulation was upheld in Bi-Lo Stations, Inc. v. Alsip, 318 N.E.2d 47 (1 D.C.A. Ill., 1974). The court found that all-night stations had become the target of serious crimes against persons and property, particularly between midnight and 6 a.m., the hours covered by the closing regulation. The court was `satisfied, upon this record, that the compulsory closing provisions . . . are neither arbitrary nor unreasonable, and that the regulation is a constitutional one, reasonably related to the public health, safety, and welfare of the Village.' Fasino, supra, was distinguished by the court from the situation before it because Fasino dealth with a general
closing ordinance not directed to a single type of business shown to cause an increase in crime of open 24 hours a day. It should be again noted, however, that the distinction is difficult to make, since Fasino did say that closing regulations cannot be used to solve indirectly such problems as noise and inadequate police protection which could be directly addressed through noise regulations or an improved police force.
In sum, it is clear that a categorical answer to your inquiry is not possible. As the Supreme Court said in Nebbia v. New York,291 U.S. 502, 525 (1933):
 [T]he guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulations valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts. (Emphasis supplied.)
Because each fact situation is unique, I have attempted by the foregoing discussion of leading decisions on closing regulations to provide you with guidelines that can be applied in your particular set of circumstances. Ultimately, of course, this is a question subject to judicial determination.
Prepared by: Frank A. Vickory Assistant Attorney Genera