### ZACONICK et al. v. CITY OF HOLLYWOOD et al.

#### Civ. No. 1329.

District Court, S. D. Florida, Miami Division.

Feb. 25, 1949.

Vincent C. Giblin of Miami, Florida, for plaintiffs.

Ellis & Spencer, of Hollywood, Florida, for defendants.

HOLLAND, District Judge.

A statement of the facts (as the Court finds them to be and concerning which there is little dispute) will serve to clarify the issues which are presented to the Court for determination in this suit.

Since 1939 the plaintiffs have been engaged at Hollywood in the business of selling at retail, jewelry, precious stones, rugs, tapestries and various other merchandise. To stimulate trade and increase their sales the plaintiffs have adopted and have pursued (since 1939, when they began doing business at Hollywood) unique methods of effecting sale. Such methods embrace some of the features of "public auction sales," but are materially different in important respects.

One of the essential features of a sale at public auction is that at the fall of the auctioneer's gavel or hammer, or his acceptance in any other manner of the highest bidder's offer to purchase, there is a completed sale. Thereafter, neither the seller nor the buyer may legally withdraw from or rescind the transaction without the consent of the other. There is a binding contract. This essential feature of "a public auction sale" has been eliminated by the plaintiffs in their business operations. They invite and solicit the submission by their patrons of competitive, but *conditional or provisional*, proposals or offers to buy their merchandise. Any patron who submits a proposal or offer to buy, which is accepted by the plaintiffs, is accorded the right to return any merchandise for which he has conditionally or provisionally paid, or for which he has conditionally or provisionally obligated himself to pay, and to procure a refund of the full amount paid (if any part of the purchase price has been paid) and a release from his conditional or provisional agreement to buy, provided such right is exercised within one year after the submission of his conditional or provisional offer. The plaintiffs are legally and contractually bound to accord such right. The patron is under no obligation to assign any reason or excuse for its exercise. In other words, if the patron is dissatisfied with the merchandise, or for any reason or for no reason wishes to withdraw from or rescind the transaction, procure a refund of any part of the purchase price paid and to be released from any financial obligation incident to the transaction, he may do so, at any time within the one-year period, by returning the merchandise and exercising the accorded right.

The right has been exercised, from time to time in the years during which the plaintiffs have been engaged in business, by many of their patrons.

Most of the plaintiffs' business is conducted during the evening hours (after six

o'clock). Quite evidently they have learned, after years of experience, that greater numbers of prospective buyers are attracted to their place of business at night than can be attracted during the daylight hours.

On September 4, 1945, the city commission of the defendant municipality adopted an ordinance by which (in section 1) it is provided that "it shall be unlawful for any person, association or persons, firm, co-partnership, or corporation, or any agent, servant, auctioneer, or employes thereof, to sell or offer for sale *by public auction* within the City of Hollywood, Florida, the following types of personal property, to-wit, articles of gold, silver, gold or silver plateware, precious stones, jewelry, watches, clocks, artificial jewelry, tapestries, cutlery, laces, antiques, objects of art, glassware, and chinaware, between the hours of six o'clock P.M. of every day, and eight o'clock A.M. of the following day, and such sale and offer to sell are hereby prohibited."

The ordinance provides (in section 7) that "any person violating the provisions of this Ordinance, upon conviction thereof in the Municipal Court, shall be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the City Hall for not more than ninety (90) days, or by both fine and imprisonment, as shall be determined by the judgment of the said Court."

Because of the conclusions reached by the Court, it would serve no useful purpose to set out or discuss other provisions of the ordinance.

The defendants contend that the ordinance is applicable to the plaintiffs and their method of conducting their business. The defendant chief of police (as he admitted in his testimony) would arrest and prosecute the plaintiffs (for alleged violations of the ordinance) were it not for the interlocutory injunction heretofore granted at the instance of the plaintiffs.

Threatened with such arrest and prosecution, the plaintiffs instituted this suit, which is for a declaratory decree under the Declaratory Judgment Act of June 14, 1934, U.S.C.A., Title 28, § 400 [now §§ 2201, 2202].

The plaintiffs contend (a) that the ordinance in question is unconstitutional (on its face) and (b) that, if not unconstitutional on its face, it cannot be constitutionally applied to the plaintiffs and their methods of doing business (as hereinabove detailed). They invoke the provisions of Article IV of the Amendments to the Federal Constitution (by which the people are guaranteed the right to be secure in their persons against unreasonable seizures); the provisions of Articles V and XIV of such Amendments (by which the people are protected against the deprivation of liberty or property without due process of law); and the provisions of Article XIV of such Amendments (by which the several states are prohibited from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States and from denying to any person within its jurisdiction the equal protection of the laws).

The plaintiffs seek an appropriate decree by which their rights shall be determined and declared and by which, if either of their contentions should be sustained, the defendant municipality, and each and all of its officers, agents, servants and employees (including the defendant chief of police), shall be enjoined from enforcing or attempting to enforce the quoted (and other) provisions of the ordinance in question against the plaintiffs, or either of them.

By their motion to dismiss the plaintiffs' complaint and petition, the defendant questioned the Court's jurisdiction. The motion was denied, but at the final hearing the jurisdictional question was again raised, and the Court has reconsidered it.

It is admitted that there is no diversity of citizenship; but it is obvious that the suit is one which arises under the Federal Constitution and may be finally adjudicated as between the parties and that the matter in controversy exceeds in value the sum of $3,000.00, exclusive of interest and costs. A substantial and material Federal constitutional question is raised by

the plaintiffs and the jurisdictional amount is involved; and, therefore, diversity of citizenship is not required. Congress has given to the district courts jurisdiction of "all suits of a civil nature * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,-000.00, and * * * arises under the Constitution or laws of the United States." The existence of concurrent jurisdiction in the state courts does not deprive this Court of jurisdiction. The Court adheres to its opinion that it has jurisdiction of the subject matter of this suit.

Several factual issues were presented by the defendants' answer, but the important and material facts (as the Court finds them from the evidence) are as hereinabove stated.

It is unnecessary to decide the question of whether the ordinance in question is unconstitutional in its terms and cannot be constitutionally enforced against "any person, association or persons, firm, copartnership, or corporation, or any agent, servant, auctioneer, or employee thereof" who shall "sell, or offer for sale, *by public auction*, within the City of Hollywood, Florida," any merchandise of the kinds or classes specified in the ordinance "between the hours of six o'clock P.M., of every day, and eight o'clock A.M. of the following day." Perhaps the ordinance can be constitutionally applied and enforced to circumstances (different from those involved in the instant case) where the evils against which the ordinance is directed exist or are likely to exist.

The Court, however, is of the opinion (and so decides) that the application of the ordinance to the plaintiffs and their methods of doing business, and its enforcement against the plaintiffs, if they pursue and continue such methods, would be unreasonable, harsh and oppressive and violative of the rights guaranteed to them by the provisions of Articles IV, V and XIV of the Amendments to the Federal Constitution.

Counsel for the defendants relies largely on the opinion and decision of the Supreme Court of Florida in the case of Levy v. Stone, 97 Fla. 458, 121 So. 565, 566; but a study and analysis of the court's opinion in the cited case will demonstrate that it does not militate against the views of this Court.

It is true that in the cited case there was involved a municipal ordinance similar (if not identical) in its terms to the ordinance here in question. It was held that the ordinance was valid as applied to "auction sales" at night of certain classes of merchandise. The auctioneer by whom the constitutionality of the ordinance was questioned (in habeas corpus proceedings) was conducting *"sales at public auction."* He was not inviting, soliciting or accepting conditional or provisional proposals or offers to buy. On his acceptance of the highest bidder's offer there was a completed sale. No right was accorded to the buyer to withdraw from or rescind the transaction. The evils which are likely to accompany such "sales at public auction" after nightfall of "precious or semi-precious stones, or imitations thereof, watches, clocks, jewelry, gold, silver or plated ware, china, glassware, or leather goods" were clearly pointed out in the court's opinion. The ordinance was designed and intended to prevent such evils.

The court (speaking through Mr. Justice Strum) said: "It is a matter of common knowledge that in the sale of merchandise of the character affected by this ordinance the public is more readily deceived and becomes an easy prey to fraud, and that auction sales of such merchandise are therefore attended with greater risk to the public. Such sales afford peculiar opportunity to impose upon, defraud, and cheat the public, because the public generally is unskilled in the art of determining the purity, quality, and value of merchandise of this character, to determine which deliberate care and often scientific tests are necessary. It is further a matter of common knowledge that fraud and irreparable injury to the public are more likely to occur in auction sales of merchandise of the character here under consideration when the same are conducted after nightfall and by artificial light, and in the excitement of competitive bidding, when little or no opportunity is offered for careful inspection, than in the case of other classes of goods,

or in the sale of the character of goods under consideration held during the daytime in the ordinary course of business. The rapid sale of such articles at public auction at night, when purchasers must buy at a glance under artificial lights and under the stimulus of competitive bidding, exposes many persons to deception and unscrupulous practices against which this character of regulation might protect them. Similar opportunities for practicing fraud and deception upon the public do not ordinarily attend auction sales of other commodities the quality and value of which are readily ascertainable by the ordinary person. The circumstances just stated, and others, furnish practical reasons for the imposition of regulations of this nature upon the sale at auction and at night of jewelry, precious stones, glassware, and the like, which reasons do not exist with respect to auction sales in other lines of business. The regulation in question therefore bears a reasonable and practical relation to the object sought to be accomplished by it, namely, the prevention of fraud and deception upon the public."

The plaintiffs in the instant case, by the adoption and effectuation of their distinctive methods of doing business, have provided every safeguard against the possibility of fraud, deception or delusion. The evils against which the ordinance in question is directed cannot occur. The plaintiffs do not conduct "sales at public auction" in the true sense of the term and as it is commonly defined and understood.

The application of an ordinance to transactions in which the evils at which the ordinance strikes cannot exist is necessarily an unreasonable application and an unreasonable exercise of police power. Regulatory measures, adopted in the exercise of the police power, which affect and impair the freedom of contract or property rights can be justified and upheld only when they are reasonable, or, in other words, when they are founded on reason. When they are unreasonable, harsh and oppressive they are violative of constitutional guaranties.

Unless an ordinance of the kind here involved has some reasonable and substantial relation to the public welfare, it is unreasonable, unconstitutional and void. It is impossible to conclude that the application of the ordinance in question to the plaintiffs, or to others employing the same methods of conducting business, would have any reasonable or substantial relation to the public safety, the public health or the public morals.

It is accordingly declared and decreed that the application of that certain ordinance numbered 608 of the defendant municipality, the City of Hollywood, adopted by its commission on September 4, 1945, and its enforcement against the plaintiffs, or either of them, if they shall pursue and continue their methods of doing business (outlined and described in their complaint and petition and hereinabove outlined and described), would be unreasonable, harsh and oppressive and violative of the rights guaranteed to them by the provisions of Articles IV, V and XIV of the Amendments to the Constitution of the United States.

It is accordingly ordered and decreed as follows:

1. That, subject to the provisions of the succeeding paragraph hereof numbered 2, the defendant municipality, the City of Hollywood, and each and all of its officers, agents, servants and employees (including the defendant J. L. Lane, the chief of police of such municipality), be, and they hereby are, permanently enjoined and restrained from enforcing or attempting to enforce against the plaintiffs, or either of them, any of the provisions of sections 1, 3, 5, 6, and 7 of that certain ordinance numbered 608 of the defendant municipality adopted by its commission on September 4, 1945.

2. That the injunctive provisions of the preceding paragraph hereof numbered 1 shall not apply or be effective unless the plaintiffs shall continue to conduct and operate their business in strict accordance with the methods outlined and detailed in their complaint and petition and shall (a) inform and advise all prospective or potential purchasers, prior to offering any article for sale between the hours of six

o'clock in the evening and eight o'clock in the morning, of the conditions or provisions subject to which any proposal or offer to buy such article is to be accepted by the plaintiffs; (b) prominently display, at all times, in their place of business a notice or bulletin in and by which prospective or potential purchasers shall be effectively and adequately informed and advised of the plaintiffs' methods of doing business (as outlined and described in their complaint and petition): and (c) furnish and deliver to each prospective or potential purchaser, whose conditional or provisional proposal or offer to buy any article offered for sale by the plaintiffs between the hours hereinabove mentioned shall have been accepted by them, a written or printed memorandum in and by which the plaintiffs shall legally and effectively bind themselves contractually to refund to him or her the full amount of any money conditionally or provisionally paid as, or on account of, the purchase price of such article, if and in the event he or she, at any time within one year after the submission of such conditional or provisional proposal or offer to buy, with or without the assignment of any reason or excuse for doing so, shall redeliver such article to the plaintiffs and request such refund. The applicability and effectiveness of the injunctive provisions of the preceding paragraph hereof numbered 1 are dependent and conditioned on strict compliance with the provisions of this paragraph.

3. That that certain bond in the penal sum of $1,000, executed on November 27, 1945, by the plaintiffs, as principals, and by Fidelity and Deposit Company of Maryland, as surety, payable to the defendants, which was filed herein by the plaintiffs, and approved by the Clerk of this Court, on November 27, 1945 (and which was required in and by the paragraph numbered 2 of the interlocutory injunctive order issued herein on November 27, 1945), be, and it hereby is, cancelled and annulled; and that such principals and such surety be, and they hereby are, and each of them hereby is, released and discharged from any and all liabilities and obligations on or under such bond.