DANIEL HALE WILLIAMS MEMORI-
AL HEALTH FOUNDATION, an Illi-
nois not-for-profit Corporation, Plain-
tiff,

v.

The CITY OF CHICAGO, a Municipal
Corporation of the State of Illinois,
and its agencies, et al., Defendants.

No. 75 C 3498.

United States District Court,
N. D. Illinois, E. D.

Feb. 5, 1976.

Lott, Powell & Williams, Ltd., McCoy,
Ming & Black, Chicago, Ill., for plaintiff.

Robert J. Downey, Asst. Corp. Coun-
sel, H. Ernest Lafontant, Douglas Pol-
sky, Stradford, Lafontant, Fisher & Mal-
kin, Donald J. Duffy, Kirkland & Ellis,
Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

In June, 1971, plaintiff, Daniel Hale
Williams Memorial Health Foundation,
an Illinois not-for-profit corporation, en-
tered into a written contract with de-
fendant, City of Chicago, and its Board
of Health, to conduct a comprehensive
neighborhood health center project in a
specified target area on the south side of
the City inhabited predominantly by
black persons. Funds for the program
were to be provided by the City from
funds received by it in turn under the
Model Cities Program, 42 U.S.C. § 3301
*et seq.* The contract, with an original
termination date of December 31, 1971,

was extended from time to time through the calendar year 1974. Renewal was refused in 1975 for reasons not here material.

The contract contained several provisions in respect to the handling of property and funds. Thus "any equipment or property furnished by the City or specifically authorized in writing to be purchased by [plaintiff] shall be vested in the City and possession thereof shall revert to the City upon the termination of the Contract and will be disposed of only as directed in writing by the City." Exhibit A to plaintiff's Complaint, p. 4, ¶ F. Plaintiff agreed

> "that all monies collected from recipients of medical care in the health center or paid on behalf of recipients by third party payor, both public and private, will be deposited by [plaintiff] in a Special Account. . . . Program income under this Contract shall be first used to meet current operating expenses. Reimbursement [i. e. funding] under this Contract shall be reduced by an amount equal to income collected in operation of this program. [Plaintiff] will direct the bank to furnish a copy of the monthly statement of the Special Account to the City. [Plaintiff] shall maintain careful records of all such funds collected and deposited in the Special Account. These records will be made available for audit purposes to the City or the Comptroller General of the United States or any authorized representative, and will be retained by [plaintiff] for three years after the expiration of this Contract unless permission to destroy them is granted by the City." *Id.* ¶ G.

Finally, the agreement provided that plaintiff would "cooperate with the City in setting up proper accounting procedures to insure that there will be no duplication of payment for services rendered under this contract." *Id.* ¶ I.

During the course of plaintiff's operation of the center contemplated by the contract with the City, plaintiff deposited funds with the defendant banks,

American National Bank & Trust Company of Chicago, Independence Bank of Chicago, Seaway National Bank of Chicago, and South Side Bank and Trust Company. The agreements of deposit were made solely between plaintiff and the four banks, *i. e.,* neither the City nor any of its officials were parties to those agreements.

In the summer of 1975, after it was decided not to renew the contract, defendant Murray C. Brown, Commissioner of the City's Board of Health, wrote each of the defendant banks under date of August 1, 1975 as follows:

> Re: Daniel Hale Williams Foundation Account
>
> Gentlemen:
>
> This is to inform you that effective July 31, 1975 no disbursements may be made on the above referenced account until an audit is completed of all cash accounts and accounts receivable of the Daniel Hale Williams Neighborhood Health Center. This procedure is in accordance with routine Federal and City guidelines when funding of a program is being closed out and does not infer any misapplication of funds. Closing out of funding of this program is in accordance with the original policy and program intent that this program should eventually become financially self sustaining.

Plaintiff's Complaint, Exhibit H.

Evidently the defendant banks honored the notice and have refused to disburse funds on plaintiff's request. This action followed.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 alleging that it seeks a declaratory judgment under 28 U.S.C. § 2201 to settle an actual controversy between plaintiff and defendants which has arisen under 42 U.S.C. § 3301 *et seq.,* the Model Cities Act. The amount in controversy is said to exceed $10,000 exclusive of interest and costs. In this respect the papers indicate that at least one of the defendant banks (American National) holds in excess of $50,000 on deposit in plaintiff's name.

Plaintiff seeks a declaration of its right to use the funds on deposit; preliminary and final injunctive relief against the defendant banks prohibiting them from honoring the City defendants' demand to stop disbursements from the accounts; the amounts on deposit with the defendant banks; damages against each defendant bank in the amount of $100,000 for misappropriation of plaintiff's funds; and preliminary and final injunctive relief against the City defendants enjoining them from interfering with plaintiff's operation of its health care facilities and with its banking relationships.

The defendant banks have answered and, in the case of American National, have joined in the prayer as to the party entitled to the funds on deposit with it. The City defendants have moved to dismiss for want of subject matter jurisdiction and it is that motion to which this memorandum is addressed.

Section 1331 of Title 28 grants district courts original jurisdiction "of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." The question here is whether plaintiff's action arises under the laws of the United States. As we understand the posture of the parties and their respective dealings with one another, we do not believe it does.

■ Subject matter jurisdiction is tested by the well pleaded necessary allegations of the complaint. Here all that appears from the face of the complaint is that plaintiff has monies on deposit solely in its own name with the defendant banks and that the defendant banks have refused to honor plaintiff's demands for those monies. True, the refusal seems to have been occasioned by the acts of the City defendants who in turn purport to act under color of federal law or regulations. But the papers show that the City defendants have no direct contractual interest in the contract of deposit between plaintiff and the banks.

No federal law has been called to our attention which purports in any way to regulate those deposits. From all that appears, the dispute between plaintiff and the defendant banks is purely and simply a banking question to be determined by state law. No diversity of citizenship exists. Clearly we do not have jurisdiction over that controversy.

■ What plaintiff has done here is anticipate a defense by the banks in an action by plaintiff against the banks for money due and owing. Thus plaintiff assumes that the banks will assert that they cannot pay plaintiff the monies on deposit because of the City defendants' notice purportedly given under "routine Federal . . . guidelines when funding of a program is being closed out . . .." Exhibit H, *supra*. But it has long been established that a person may not convert a non-federal claim into a federal claim by anticipating a federal defense and attacking that defense in the initial complaint.

This was precisely the tactic employed by plaintiffs in *Louisville & N. R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). There, in 1871, the Louisville and Nashville Railroad settled a claim for damages that the Mottleys had against it by agreeing to give the Mottleys free passes each year for the remainder of their lives. In 1906 Congress prohibited free transportation by railroads and the following year the railroad did not give the Mottleys their pass. They sued in federal court for specific performance, alleging that the statute did not apply in the circumstances of their case, and that if it did, it was unconstitutional. The Mottleys prevailed in the trial court but on appeal the Supreme Court held that the trial court had no jurisdiction. The Court said:

It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the

Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution. 211 U.S. at 152, 29 S.Ct. at 43.

We believe that the *Mottley* case is precisely in point here and is controlling. While plaintiffs purport to seek additional injunctive relief against the City defendants restraining them from interfering with the operation of plaintiff's health care facilities, there are no allegations of interference by the City defendants other than in respect to plaintiff's accounts with the defendant banks. Those accounts, as we have seen, are between plaintiff and the defendant banks. How the defendant banks will respond to an action by plaintiff in the state courts for monies due and owing cannot be anticipated by the plaintiff so as to confer federal question jurisdiction upon this court.

Although the defendant banks have answered not raising the question of subject matter jurisdiction, we can and must inquire into it whenever it is raised. Indeed, we are obligated to do so on our own motion should no party present the question.

The motion of the City defendants to dismiss the action for want of subject matter jurisdiction is granted and judgment will enter dismissing the action as to all defendants for want of jurisdiction.