ARDEN–MAYFAIR, INC., Bernard Briskin, Philip L. Carret, Eugene Gelson, Thomas L. Karsten, F. Bruce Krysiak, Chester I. Lappen, Charles N. Mathewson, George A. Rhoten, Frederick A. Schnell, Ralph J. Shapiro and Curtis H. Palmer, Plaintiffs,

v.

LOUART CORP., Marshall I. Kass, Henry L. Melczer, Harry F. Frazer, Estella B. Frazer, Elizabeth B. Elliott Ashley, Robert E. Hutter, Adelene M. Hutter, Thomas E. Londergan, Charlotte M. Park, Edith E. Pepper, Robert G. Potter, Jr., Pauline B. Potter, Frances L. Salzenberg, Mary T. Walls, Defendants.

Civ. A. No. 77–93.

United States District Court, D. Delaware.

July 19, 1977.

Joseph A. Rosenthal, of Morris & Rosenthal, Wilmington, Del. (Daniel A. Weber, of Mitchell, Silberberg & Knupp, Los Angeles, Cal., of counsel), for plaintiff, Arden-Mayfair, Inc.

Bruce M. Stargatt, Jack B. Jacobs and Richard A. Levine, of Young, Conaway, Stargatt & Taylor, Wilmington, Del. (James F. Crafts, Jr., Robert P. Feyer and Keith A. Hunsaker, Jr., of Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., of counsel), for defendants.

CALEB M. WRIGHT, Senior District Judge.

## I. INTRODUCTION

This declaratory judgment action was originally filed in state court and removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 by petition filed on March 15, 1977. Presently before the Court is plaintiff's Motion to Remand.[1] Remand is sought on the grounds that this Court lacks jurisdiction because the action does not present a federal question and that the removal was defective because of the failure of some defendants to join in the removal petition. The Court concludes that it does not have federal question jurisdiction of this case, and in light of this conclusion, it is unnecessary to discuss the failure of some defendants to join in the removal petition.

## II. BACKGROUND

Plaintiff, Arden-Mayfair, a Delaware corporation, brought this action in state court naming as defendants (1) Louart Corporation, a California corporation, and a substantial shareholder of Arden-Mayfair, Marshall I. Kass, and Henry L. Melczer, Louart's President and Vice-President (collectively "the Louart defendants"); (2) each of Arden-Mayfair's incumbent directors; (3) nine named Delaware resident Arden-Mayfair shareholders; and (4) John Doe 1 to John Doe 12,00 intended to represent individually and as class action representatives Arden-Mayfair shareholders.

The underlying controversy in this case is a direct result of recent California legislation which became effective January 1, 1977, expanding applicability of the California General Corporation Law ("G.C.L."). Section 2115 of the G.C.L. makes corporations not incorporated in California, which have no "outstanding securities listed on any national securities exchange", subject to certain provisions of the G.C.L. governing internal corporate affairs if:

" . . . the average of the property factor, the payroll factor and the sales factor (as defined in Sections 25129, 25132 and 25134 of the Revenue and Taxation Code) with respect to it is more than 50 percent during its latest full income year and if more than one-half of its outstanding voting securities are held of record by persons having addresses in this state [California]." § 2115(a).

Any corporation which satisfies the above tests is required by § 301(a) of the G.C.L. to conduct annual election of the entire board of directors, and under § 708(a) thereof to permit cumulative voting with respect to the election of directors.[2]

---

**1.** Shortly after removal, certain defendants filed a Motion to Dismiss on the ground that under *Barber-Greene Co. v. Walco National Corp.*, 428 F.Supp. 567 (D.Del.1977), the Court lacked jurisdiction due to the impropriety of substituted service under 10 Del.C. § 365. Shortly thereafter, plaintiffs filed the instant Motion to Remand. The Court conducted independent research and gave full consideration to letter memoranda filed by the parties on the issue of which motion should be disposed of first. Finding authority in support of both sequences, *see Walker v. Savell*, 335 F.2d 536 (5th Cir. 1964), and *Moltke v. Intercontinental Shipping Corp.*, 86 F.Supp. 662 (S.D.N.Y.1949), the Court agreed with Judge Tuttle that "it may be that the district court should be free to dispose of the case upon whichever of the two grounds may appear to it to be the more convenient." *Walker v. Savell, supra* at 539, quoting

from *Garden Homes v. Mason*, 238 F.2d 651, 654 (1st Cir. 1956). The Court informed counsel by letter dated May 13, 1977 that in this case it was more appropriate to dispose of the Motion to Remand first in that the Court felt "an obligation to address issues relevant to and only relevant to its own jurisdiction before addressing issues relevant to the jurisdiction of both the state court and this Court."

**2.** G.C.L. § 708(a) allows a shareholder to "cumulate such shareholder's votes and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which the shareholder's shares are entitled, or distribute the shareholder's votes on the same principle among as many candidates as the shareholder thinks fit."

Arden-Mayfair is a Delaware corporation. Under its Certificate of Incorporation and by-laws, it prohibits cumulative voting. It maintains a staggered board of directors whereby three directors are elected annually for terms of three years. These provisions are conceded by the Louart defendants to be valid under the General Corporation Law of Delaware. Thus, should Arden-Mayfair satisfy the tests set forth in § 2115 of the G.C.L., the requirements of the California law would be in direct conflict with certain aspects of Arden-Mayfair's current internal corporate structure as sanctioned by Delaware law.

By letter dated December 30, 1976, Louart Corporation notified Arden-Mayfair of the impending effectiveness of the above described changes in the G.C.L. and stated its position that Arden-Mayfair satisfied the tests set forth in § 2115 and that it was therefore required to comply with the requirements of the California law in the conduct of its 1977 annual meeting. Apparently in response, Arden-Mayfair filed this declaratory judgment action in the Court of Chancery of the State of Delaware in and for New Castle County "to set at rest the conflicting claims and contentions of the parties." (Complaint ¶ 20). The Louart defendants removed the case to this Court by petition filed March 15, 1977, claiming jurisdiction under 28 U.S.C. § 1331(a). Arden-Mayfair has moved to remand on the ground that federal jurisdiction is lacking under that provision, in that the case is not one which "arises under the Constitution, laws, or treaties of the United States".

III. FEDERAL QUESTION

The removal statute provides, *inter alia*:

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ." 28 U.S.C. § 1441(a).

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

"Thus, in order to remove a civil action from the state court pursuant to this statute, the District Court of the United States must have original jurisdiction of the action." *Coulston v. Int'l Brotherhood of Teamsters, etc.*, 423 F.Supp. 882, 883 (E.D. Pa.1976). The Louart defendants in their removal petition, Docket Item No. 1, at ¶ 5, and in their briefs and oral argument rely exclusively on 28 U.S.C. § 1331(a) as providing this Court with original jurisdiction. That section provides:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

The value of the amount in controversy appears to exceed the jurisdictional minimum and the focus of the Court's inquiry is whether or not this case "arises under the Constitution . . . of the United States."

There are several well established tests which must be considered in determining whether a given case arises under federal law.

[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or the petition for removal. Indeed, the complaint itself will not avail as a basis of jurisdiction insofar as it goes beyond a statement of

the plaintiff's cause of action and anticipates or replies to a probable defense. *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (citations omitted).[3]

This last test, limiting inquiry to the "well-pleaded" portions of the complaint, i. e., those portions which are necessary to plaintiffs' claim and do not anticipate or reply to a defense,[4] is "deceptively simple", since its application "necessarily introduces into the process of determining jurisdiction the question of what is well-pleaded—and with it, a host of procedural rules and distinctions." Mishkin, The Federal "Question" in the District Courts, 53 Colum.L.Rev. 157, 176 (1953). "[T]he rule has been heavily criticized for making the existence of federal jurisdiction depend on technicalities that are irrelevant to the interests underlying federal jurisdiction and for requiring adherence to pleading niceties rejected for civil practice." Goldberg, The Influence of Procedural Rules of Federal Jurisdiction, 28 Stan.L.Rev. 397, 410–411 (1976) (citations omitted).

As difficult and complex as the application of this test is to a traditional lawsuit, it is far more so in a declaratory judgment action. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) was a declaratory judgment action in which the plaintiff sought a declaration that certain contracts it had with defendant were still in effect and binding. The continued validity of the contracts turned on whether or not plaintiff had received a certificate of public convenience and necessity from the Federal Power Commission under The Natural Gas Act, 15 U.S.C. § 717f(c). Justice Frankfurter, observing that the Declaratory Judgment Act is procedural only, in that it enlarges the range of remedies but does not extend jurisdiction, ruled that the jurisdictional issue "must be determined

without regard to the procedural possibilities made available by the Declaratory Judgment Act." *Bills v. Shaw, Hooker & Co.,* 398 F.Supp. 161, 163 n. 4 (N.D.Cal. 1975). See, *Potomac Passengers Ass'n v. Chesapeake & Ohio Railway Co.,* 171 U.S. App.D.C. 359, 520 F.2d 91, 96–97 (1975). Since the federal issue would have arisen only by way of defense had the suit been a coercive action for damages or enforcement of the contracts, the Court held that the case did not "arise under" federal law, saying:

"To sanction suits for declaratory relief as within the jurisdiction of the District Courts merely because, as in this case, artful pleading anticipates a defense based on federal law would contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act." 339 U.S. at 673–74, 70 S.Ct. at 880.

The refusal to allow federal question jurisdiction to be enlarged by declaratory judgment actions was reiterated in *Public Service Commission v. Wycoff Co., Inc.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). In that case, plaintiff sought injunctive and declaratory relief from interference by the Public Service Commission of Utah with its business of importing, processing, and transporting films and newsreels on the ground that such interference imposed an undue burden on commerce. The Supreme Court held that the case could not be maintained because of the lack of proof of any threatened act of the defendants, and, in dictum, said:

"In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the de-

---

**3.** The continuing importance of these rules was reaffirmed recently by the Supreme Court in *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); and *Oneida Indian Nation of New York v. County of Oneida, New York,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

**4.** A classic application of this rule may be found in *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

claratory defendant may assert in the Utah courts. Respondent [plaintiff] here has sought to ward off possible action of the petitioners [defendants] by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." 344 U.S. at 248, 73 S.Ct. at 242. (citations omitted).

■ Notwithstanding these pronouncements, a number of courts have apparently disregarded this approach and entertained declaratory judgment actions in which the plaintiffs were attempting to establish defenses based on federal law to threatened actions based on state law.[5] Nonetheless, it is well established that a declaratory judgment action seeking to establish the invalidity of a threatened claim based on federal law "arises under" federal law,[6] while a declaratory judgment action seeking to establish a federal defense to a threatened proceeding based on state law does not.[7]

■ Applying these principles to the instant case mandates the conclusion that if this action had been brought initially in federal court, it would not have been within federal question jurisdiction. The complaint seeks a declaration that "the claims and contentions asserted by Arden-Mayfair as hereinabove alleged are valid and the claims and contentions of any defendants to the contrary are invalid." Complaint at 9–10. The defendants assert that the G.C.L. applies to the plaintiff corporation and requires it, *inter alia,* to have annual elections of the entire board, and to allow cumulative voting. The plaintiff contends that its internal affairs are subject to regulation by the corporate laws of Delaware, the state in which it is incorporated, and that a wide variety of constitutional provisions would be abridged if it were required to comply with the G.C.L. as well. Plaintiff is relying on Delaware state law and the United States Constitution, in support of its position while defendant has asserted rights only under California state law. Had defendant initiated the threatened coercive action and sought an order requiring the plaintiff to comply with the provisions of the G.C.L., its claim would have been based

---

**5.** *See General Foods Corp. v. Henderson,* 334 F.Supp. 19 (D.N.M.1971); *Zaconick v. City of Hollywood,* 85 F.Supp. 52 (S.D.Fla.1949); *Regents of N.M. College of Agriculture and Mechanic Arts v. Albuquerque Broadcasting Co.,* 158 F.2d 900 (10th Cir. 1947); *Rambusch Decorating Co. v. Brotherhood of Painters, Decorators and Paperhangers of Amer.,* 105 F.2d 134 (2nd Cir. 1939); and *Teeval, Inc. v. City of New York,* 92 F.Supp. 827 (S.D.N.Y.1949). *See, also, Serio v. Liss,* 300 F.2d 386, 391–92 (3rd Cir. 1961) (Hastie, J. dissenting).

**6.** *See, e. g., Tokyo Shibaura Elec. Co., Ltd. v. Zenith Radio Corp.,* 548 F.2d 88 (3rd Cir. 1977); *Thiokol Chemical Corp. v. Burlington Ind., Inc.,* 448 F.2d 1328 (3rd Cir. 1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972);

*First Nat'l Bk. of Shawnee Mission v. Roeland Park State Bk. and Tr. Co.,* 357 F.Supp. 708 (D.Kan.1973).

**7.** *See, e. g., Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Com'n,* 465 F.2d 237 (3rd Cir. 1972); *McCorkle v. First Pennsylvania Banking and Trust Co.,* 459 F.2d 243 (4th Cir. 1972); *Chandler v. O'Bryan,* 445 F.2d 1045 (10th Cir. 1971); *Daniel Hale Williams Memorial Health Foundation v. City of Chicago,* 407 F.Supp. 342 (N.D.Ill.1976); *Bills v. Shaw, Hooker & Co.,* 398 F.Supp. 161 (N.D.Cal.1975); *Safeguard Mutual Ins. Co. v. Commonwealth of Pennsylvania,* 372 F.Supp. 939 (E.D.Pa.1974).

entirely on state law, with the federal issue being introduced only by way of defense when plaintiff asserted its constitutional claim. As discussed above, in that situation, there would be no federal question jurisdiction.

Although it would seem that this conclusion requires the Court to remand since the Court cannot entertain a case on removal unless it would have had original jurisdiction of it, the Third Circuit's decision in *La Chemise Lacoste v. Alligator Co., Inc.,* 506 F.2d 339 (3rd Cir. 1974), *cert. denied,* 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975), necessitates further discussion. Plaintiff there sought declaratory relief in state court that it owned common law rights in a particular well-known crocodile emblem and an injunction preventing defendant from using the crocodile mark. Defendant's removal to federal court was upheld by the lower court on the ground that since defendant had threatened a federal trademark infringement action, the district court had original federal question jurisdiction.[8] Judge Aldisert, writing for the Third Circuit, observed that the *Wycoff* teaching had been applied previously only in declaratory proceedings commenced in the federal courts and discussed the propriety of using that approach to determine federal jurisdiction in removed declaratory judgment cases. In removal cases, principles governing removal procedure, as well as those governing federal question determination, must be kept in mind. The rule that "the *initial pleading* in the state court must set forth the basis for removal" and

the " 'restrictive policy of Congress against removal,' " persuaded Judge Aldisert to "decline to transport the dictum of *Wycoff*", 506 F.2d at 344–45, to removed state declaratory judgment actions. However, he continued to analyze the case assuming *arguendo* the applicability of the *Wycoff* approach. The Court still found no federal jurisdiction because it was unclear "as a matter of practical wisdom or of the record" whether defendant would have brought a suit under federal trademark law, state trademark law, or state unfair competition law. Since the threatened action was not "necessarily" based on federal law, Judge Aldisert held that even assuming *arguendo* that *Wycoff* applied, its application would not support federal jurisdiction.

The refusal of the Third Circuit to apply the *Wycoff* principle to removed declaratory judgment actions while it continues to apply that test to declaratory judgment actions originally filed in federal courts[9] means that federal question jurisdiction will be determined in different ways in those two situations. This represents a departure from the general rule that the same standards are to be applied in both situations. *PAAC v. Rizzo,* 502 F.2d 306, 313 (3rd Cir. 1974).[10] The decision has been criticized on this ground as well as on the grounds that strict construction of the removal statute was misplaced and that resolution of the federal question issue solely on the basis of the complaint does not mandate rejection of the *Wycoff* approach.[11]

---

8. The district court also upheld removal on the ground that it could look beyond the complaint in order to ascertain the federal status of the parties when that status is relevant to jurisdiction. *See, La Chemise Lacoste v. Alligator Co., Inc.,* 313 F.Supp. 915, 917–18 (D.Del.1970). That holding, reversed by the Third Circuit, is not relevant to this case.

9. *See e. g., Tokyo Shibaura Elec. Co., Ltd. v. Zenith Radio Corp., supra,* n. 6; *Thiokol Chemical Corp. v. Burlington Ind., Inc., supra,* n. 6; and *Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Com'n, supra,* n. 7.

10. This rule is apparently based on the use of similar language to define jurisdiction in the removal statute and the federal question juris-

diction statute. Compare 28 U.S.C. § 1441(b) with 28 U.S.C. § 1331(a).

11. Note, Removal-State Declaratory Actions Based on Federal Question Jurisdiction, 17 Bost.Col.Ind. and Com.L.Rev. 72, 85–87 (November, 1975). The note also suggests that in rejecting *Wycoff* the Court perhaps was embracing "the liberal view of federal question jurisdiction—that declaratory actions are new forms of action and should be judged on their own merits rather than analyzed as to the underlying coercive action." *Id.* at 86. *See,* The American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts Tentative Draft No. 6, § 1311(a) at 5; Mishkin, The Federal "Question" in the District

Although all of the implications of *La Chemise Lacoste* for the instant case are not clear, in at least one respect that case controls the analysis which must be undertaken here. In both cases it is clear that, assuming *arguendo* the application of the *Wycoff* test is appropriate, neither case "arises under" federal law, since neither threatened action would have been based on federal law. In *La Chemise Lacoste*, the threatened action was not "necessarily" federal, and here the threatened action is definitely not federal. The difficult question *Lacoste* presents for the instant case, however, is what result should obtain if *Wycoff* is not applied.[12] The *Lacoste* court did not have to reach that issue since the only possible federal claim could only have been raised by the declaratory defendant. In this case, however, the federal issue has been raised by the declaratory plaintiff as a basis for its claim that it is subject to the provisions of the Delaware law and immune from regulation under the California law. It would be impermissible even absent the application of *Wycoff* to removed declaratory actions, to allow cases over which the district court would not have original federal question jurisdiction to be removed to federal court based on federal question jurisdiction. This would be contrary to the language of the removal statute, which authorizes removal of cases "of which the district courts have original jurisdiction," 28 U.S.C. § 1441(a) and (b), and the Congressional purpose "to restrict the jurisdiction of the federal courts on removal". *La Chemise Lacoste v. Alligator Co., Inc., supra* at 344, quoting from *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). In light of this limitation and the Court's conclusion discussed *supra* that it would not have had original jurisdiction of the instant case had it been brought originally in federal court, this case must be remanded and any attempt to develop a special rule to determine whether a federal question is presented in a removed declaratory action is unnecessary here.

Accordingly, plaintiff's Motion to Remand is granted.

---

Courts, *supra* at 181-82; Goldberg, The Influence of Procedural Rules on Federal Jurisdiction, *supra* at 481-82; Trautman, Federal Right Jurisdiction and the Declaratory Remedy, 7 Vand.L.Rev. 445, 468 (1954); and, Recent Case, 81 Harv.L.Rev. 1580, 1583-84 (1968). *And, see,* Cohen, The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law, 115 U.Pa.L.Rev. 890, 915 (1967).

12. It may be that the attempt to establish the validity of a federal defense by way of a declaratory judgment is adequate to sustain federal question jurisdiction upon removal regardless of the legal basis of the threatened action. The problem with this outcome is that it allows cases which could not have been brought in federal court originally, due to *Wycoff*, to be removed to federal court. It may also be that the only type of declaratory case which may be removed based upon federal question jurisdic-

tion is one in which both the asserted defense and the threatened action are based on federal law. Although these cases would certainly be cases over which the district courts have original jurisdiction, the removal requirement restricting inquiry to the complaint only, which is the support for the *Lacoste* holding, makes it impossible to isolate this class of cases. Finally, it may be that declaratory judgment actions are not removable. This seems to be an unwarranted restriction on the right to remove which would allow a party to prevent his adversary from having a federal controversy resolved in a federal forum by simply getting to the courthouse first. *See generally,* Note, Removal-State Declaratory Actions Based on Federal Question Jurisdiction, *supra* note 11 at 87-88.